Kirk D. Dillman (SBN 110486)
kdillman@mckoolsmithhennigan.com
Alan P. Block (SBN 143783)
ablock@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200

Steven Rizzi
srizzi@McKoolSmith.com
Ramy E. Hanna
rhanna@McKoolSmith.com
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, NY 10001-8603
Telephone: (212) 402-9400

Christopher P. McNett (SBN 298893)
cmcnett@mckoolsmith.com
MCKOOL SMITH, P.C.
1100 15th Street, NW
5th Floor
Washington, DC 20005
Telephone: (212) 402-9400

Scott W. Hejny (admitted *pro hac vice*)
shejny@mckoolsmith.com
McKOOL SMITH, P.C.
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000

*ATTORNEYS FOR EXPRESS MOBILE, INC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EXPRESS MOBILE, INC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:20-cv-08491-RS |
| | ) | |
| v. | ) | **PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| | ) | |
| BOOKING.COM B.V., PRICELINE.COM LLC, AGODA COMPANY PTE. LTD., and OPENTABLE, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

1

2

# <u>TABLE OF CONTENTS</u>

3    I.      INTRODUCTION..............................................................................................1

4    II.     BACKGROUND..............................................................................................2

5            A.    The Motion Mischaracterizes Express Mobile's First Amended Complaint. ...........2

6            B.    The Infringement Allegations in the FAC Implicate Numerous Servers
                   Other Than Those Selectively Addressed in the Motion ............................6

7
     III.    ARGUMENT .................................................................................................9
8
             A.    Applicable Legal Standards ...................................................................9
9
             B.    Extraterritoriality is a Factual Issue that Cannot be Resolved at the
10                 Pleadings Stage. ...................................................................................10

11           C.    The Court Should Deny Moving Defendants' Request to Take Judicial
                   Notice of the Locations of Their Servers. ...........................................11
12
             D.    Moving Defendants Have, to Date, Failed to Provide Meaningful Discovery
13                 on Their Server Locations. ...................................................................13

14           E.    The Moving Defendants' Case Law Does Not Support Judgment of No
                   Direct Infringement on the Pleadings......................................................14
15
             F.    Moving Defendants do not Address Express Mobile's Indirect Infringement
16                 Contentions............................................................................................18

17           G.    Moving Defendants Arguments Concerning "Making" Similarly Fall Flat. ...........19

18   IV.     CONCLUSION ..............................................................................................19

19

20

21

22

23

24

25

26

27

i

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Asia Vital Components Co. v. Asetek Danmark A/S,*
    377 F. Supp. 3d 990 (N.D. Cal. 2019) .................................................................................. 19

5

6

*Centillion Data Sys., LLC v. Qwest Comm. Int., Inc.,*
    631 F.3d 1279 (Fed. Cir. 2011) ................................................................................... 16, 17

7

*Dworkin v. Hustler Magazine Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ............................................................................................ 9

8

9

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.,*
    909 F.3d 398 (Fed. Cir. 2018) ..................................................................................... 2, 18

10

*epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.,*
    492 F.Supp.2d 608 (E.D. Tex. 2007) .......................................................................... 16, 17

11

12

*Fleming v. Pickard,*
    581 F.3d 922 (9th Cir. 2009) ............................................................................................ 10

13

14

*Innovative Sports Mgmt. v. Robles,*
    No. 13-CV-00660-LHK, 2014 WL 129308 (N.D. Cal. Jan. 14, 2014) ................................ 11

15

*Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.,*
    No. 2:10-CV-90-TJW, 2011 WL 1004873 (E.D. Tex. Mar. 18, 2011) ................................ 10

16

17

*Millenium TGA v. Doe,*
    2011 WL 7444064, Case No. 10-C-5603 (N.D. Ill. Sept. 26, 2011) ................................... 13

18

19

*NTP, Inc. v. Research In Motion, Ltd.,*
    418 F.3d 1282 (Fed. Cir. 2005) ................................................................................... 14, 18

20

*Nuance Commc'ns Inc. v. Tellme Networks Inc.,*
    707 F. Supp. 2d 472 (D. Del. 2010) .................................................................................. 16

21

22

*Perfect 10 v. OCOM B.V.,*
    No. 2:14-cv-00808, Dkt. No. 17 (C.D. Cal. Mar. 28, 2014) ............................................... 11

23

24

*Qwest Communs. Corp. v. City of Berkeley,*
    208 F.R.D. 288 (N.D. Cal. 2002) ...................................................................................... 10

25

*Soverain Software LLC v. Newegg Inc.,*
    836 F. Supp. 2d 462 (E.D. Tex. 2010), *rev'd on other grounds*, 705 F.3d 1333 (Fed.
    Cir. 2013), *amended on reh'g*, 728 F.3d 1332 (Fed. Cir. 2013) ........................................ 16

26

27

ii

28

*Tech. Patents, LLC v. Deutsche Telekom AG*,
    573 F. Supp. 2d 903 (D. Md. 2008) ................................................................. 10, 11

*U.S. v. Perea-Rey*,
    680 F.3d 1179 (9th Cir. 2012) ........................................................................ 13

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ...................................................................... 17

*Willner v. Manpower Inc.*,
    35 F. Supp. 3d 1116 (N.D. Cal. 2014) ........................................................ 2, 10

**STATUTES**

35 U.S.C. § 271(a)................................................................................... 14, 18, 19

**OTHER AUTHORITIES**

Fed. R. Evid. 201(b), 201(b)(2)................................................................ 11, 13

Fed. R. Civ. P. 12(b)................................................................................... 9

Fed. R. Civ. P. 12(c)................................................................................... 9

iii

## I.    INTRODUCTION

More than a year after the filing of the Original Complaint (December 1, 2020), certain of the named Defendants, specifically Booking.com B.V., Priceline.com LLC, and Agoda Company PTE. LTD. (collectively, "Moving Defendants") belatedly seek a nonspecific "judgment on the pleadings" ("Motion").  Given that the Motion completely ignores Express Mobile's allegations of indirect infringement, it appears to be seek a judgment of only no direct infringement, and only for three of the four related Defendants.[1]

The ill-conceived Motion is based on the false premise that Express Mobile's First Amended Complaint ("FAC", Dkt. No. 26) "alleg[es] infringement due to certain methods practiced by Defendants' computer servers solely located in Europe and Asia." Motion at 2.  In reality, Express Mobile's FAC provides detailed factual allegations of U.S.-based acts of infringement of both method and system patent claims via hotel booking platforms provided by the Moving Defendants throughout the United States that generate substantial revenue from U.S.-based users. The Motion does not dispute that such platforms practice each limitation of the identified patent claim. Nor does the Motion contend that Moving Defendants rely *solely* on servers outside the U.S. to provide such platforms in the U.S.  Indeed, it does not connect any of the servers allegedly located in Europe and Asia to performance or satisfaction in the U.S. of even a single patent claim limitation.

The Motion also impermissibly requests that the Court take judicial notice of extrinsic and admittedly unreliable facts concerning the locations of servers.  Finally, the Motion fails to inform the Court that even if there was a current basis to conclude that the accused platforms are supported entirely outside of the U.S., which there is not, the Moving Defendants could still be liable for at least inducement, because "liability for induced infringement under § 271(b) can be imposed based on extraterritorial acts."  *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd*., 909 F.3d

---

[1] In addition to not implicating the fourth Defendant (OpenTable, Inc.) at all, the Motion thus does not seek case-dispositive relief for any of the Moving Defendants.

PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO                    Case No. 3:20-cv-08491-RS
DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS

398, 408 (Fed. Cir. 2018).

Simply put, the Motion necessarily implicates highly fact-specific issues associated with the Moving Defendants' territoriality challenges that cannot be resolved on the pleadings. The facts necessary to properly analyze the issues are not before the Court at this stage of the case, and are subject to outstanding discovery requests to the Moving Defendants. Thus, as demonstrated below, the Motion should be denied in its entirety because it does not come close to demonstrating that "it is ***beyond doubt that the plaintiff can prove no set of facts*** in support of his claim which would entitle him to relief," as required by the law. *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1123 (N.D. Cal. 2014) (emphasis added).

## II.     BACKGROUND

### A.     The Motion Mischaracterizes Express Mobile's First Amended Complaint.

As a threshold matter, the facts set forth in Express Mobile's 191-page FAC, which must be accepted as true for purposes of the Motion, include detailed allegations regarding the Moving Defendants' infringing activities ***in the United States***.  FAC ¶¶ 55, 59, 60, 97, 104-106, 169, 177-179, 224-226, 269, 277-279, 328.  The FAC does ***not*** plead that all of the relevant servers "are located outside the United States," which is the false foundation upon which the entire Motion rests. *See* Mot. at 2.

For example, Express Mobile alleged that "Defendants develop, market, sell, and distribute the Accused Instrumentalities, or products and services that use the Accused Instrumentalities, to consumers throughout the United States, including in this State and this Judicial District." FAC ¶ 55.  More specifically, with respect to direct infringement of, *e.g.*, the (now expired) '397 Patent, the FAC further alleges that Moving Defendants provided the Booking Platform in the United States, which allows users in the United States to build web pages for U.S. properties in a manner that practiced each step of claim 1. FAC ¶ 61-71 (showing how the Booking Platform can be used to create web pages for hotels located in Norwalk, Connecticut). The same is true for Agoda, Priceline.com, and the YCS Platform. FAC ¶ 72-81 (showing how the YCS Platform can be used to create listings for hotels in Las Vegas, Nevada). As another example, with respect to the '755 Patent,

2

the FAC similarly details how the Booking and YCS Platforms practice the patent in the context of U.S.-based property owners creating Web pages for display on Booking's website.  The Moving Defendants do not and cannot dispute that the platforms at issue are available to property owners and their customers throughout the U.S., including in, *e.g.*, Norwalk, Connecticut (the Booking Platform at FAC ¶¶ 180-189) and New York (the YCS Platform at FAC ¶¶ 190-197).  Similar allegations are included with respect to the other asserted patents.  FAC ¶¶ 107-116 (Booking Platform, '168 Patent), 117-122 (YCS Platform, '168 Patent), 227-238 (Booking Platform, '287 Patent), 239-249 (YCS Platform, '287 Patent), 280-292 (Booking Platform, '044 Patent), and 293-304 (YCS Platform, '044 Patent).

The FAC also includes allegations regarding indirect infringement by the Moving Defendants of each of the asserted patents, based on direct infringement by "customers, clients, partners, developers, and end users of the" platforms.  FAC ¶¶ 97 ('397 Patent), 169 ('168 Patent), 216 ('755 Patent), 269 ('287 Patent), and 328 ('044 Patent).

Contrary to the Moving Defendants' argument that Express Mobile has somehow "admi[tted]" in the FAC that the servers for the Accused Instrumentalities are located wholly outside the United States (Mot. at 12-13), the FAC is unsurprisingly silent as to the locations of the specific servers used by the Moving Defendants to infringe the asserted patents, as that information is not known to Express Mobile, and is the subject of outstanding document and other discovery requests.

The only mention in the complaint of ***any*** servers located outside the U.S. appears in the following screenshot from a 2015 Quora blog post attributed to a developer at Booking.com:

PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO
DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Case No. 3:20-cv-08491-RS

Kristian Köhntopp, Principal Developer at Booking.com (2016-present)
Answered Jun 28, 2015 · Author has **121** answers and **526.7k** answer views

Bookng is using rented datacenters, one in Amsterdam and one in Slough, to host their own machines. All of production is running on bare metal, non-virtualized, non-cloud, which maximizes reliable performance and minimizes variance in response times.

Web servers are blade machines, databases are HP DL380 type servers with a quarter terabyte of memory or more (or SSD blades with a similar CPU and memory configuration). The architecture is a two-tier architecture running mod_perl in the web servers, connecting to MySQL databases in the back.

Booking is also using several CDNs to host static content, which is by far the majority of the traffic by volume, due to the large number of large images that are needed to present hotels.

FAC ¶ 68; *see also* FAC ¶¶ 108, 181, 232, 282. Even though it is the centerpiece of the Motion, the Moving Defendants do not even admit the truth or accuracy of any of the facts in this post. Dkt. No. 51 at ¶¶ 68 (arguing that "[t]he allegations of this Paragraph include claim terms from a patent that Plaintiff alleges to be infringed by Booking.com and which may be subject to construction in this case" and stating that "[s]uch allegations are legal conclusions to which no response is necessary, and Booking.com denies any allegation of infringement."). *See also* Dkt. No. 51 at ¶¶ 108 (same), 181 (same), 232 (same), and 282 (same).

First, the FAC makes clear that the post is cited for the sole purpose of supporting the contention that Booking uses MySQL servers, and not to allege the locations of Booking's server locations, which are not known to Express Mobile. FAC ¶ 68 ("[W]ebsites for the Booking products were supported by a MySQL database, an open-source relational database management system, which served a backend database to retrieve and store data for Booking websites"). In addition, the post is dated 2015, more than five years before the filing of this case, and does not discuss datacenter locations for other subsidiaries of Booking's parent company (then known as "Priceline Group," now known as Booking Holdings).

In any event, this post indicates that Booking used rented datacenters in Amsterdam and Slough in 2015, but does not indicate that these were Booking's **only** datacenter locations. Nor does it state which components of Booking's products were hosted on these datacenters. And noticeably

4

PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO
DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Case No. 3:20-cv-08491-RS

1  absent from the Motion is any actual contention—much less evidence—that the **relevant** servers

2  used to provide the infringing platforms in the U.S. are all located outside the U.S.

3       This is not surprising, given that the post further states that "Booking is also using several

4  CDNs" to host content.  A CDN is "a service that caches the pages of a Web site on geographically

5  dispersed servers to enable faster delivery of Web pages." Ex. A, Microsoft Computer Dictionary,

6  "CDN."  "When a page is requested at a URL that is content delivery–enabled, the content delivery

7  network routes the user's request to a cache server close to the user."  *Id*.  Prominent CDNs, like

8  Cloudflare, Amazon Web Services, Akamai, and Fastly, provide servers all over the world so that

9  content is hosted close to each end user.  For example:



17  Ex. B, https://www.cloudflare.com/network/.

18       CDNs route requests to geographically dispersed cache servers around the world to provide

19  for faster access. See Ex. A. Every major CDN includes servers in dozens of U.S. cities.  *See, e.g.,*

20  Exs. B-D (https://www.fastly.com/network-map/ , https://www.akamai.com/visualizations/media-

21  delivery-network-map , https://www.cloudflare.com/network/ ).  CDNs are used to provide servers

22  near customers—including servers in the United States—to serve content in the most efficient way

23  possible.  In other words, rather than hosting web services only in one home location, service

24  providers go out of their way to host their services near their customers, regardless of where in the

25  world the customers are physically located when they make a request.

26       These CDNs are thus examples of datacenters and servers Booking used **in addition** *to* the

27  Amsterdam and Slough datacenters, which would have included locations in the United States.

28

PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO          Case No. 3:20-cv-08491-RS
DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Given that Moving Defendants conduct extensive business in the United States, [2] it is at least plausible, and in fact likely, that they made and continue to make use of U.S.-based servers and CDNs to support their extensive U.S. business. In short, the post is entirely consistent with—and actually supports—Booking's use of servers located in the United States.

The Motion is even more strained with respect to Defendants Priceline.com and Agoda, as there is no reference in the FAC whatsoever to server locations for the YCS Platform.

### B. The Infringement Allegations in the FAC Implicate Numerous Servers Other Than Those Selectively Addressed in the Motion

The FAC includes additional allegations that further support acts of infringement by the Moving Defendants in the United States. The Motion selectively focuses on the alleged locations of only certain servers associated with just two of the websites referenced in the complaint, "join.booking.com" and "ycs.agoda.com." But Moving Defendants admit that Express Mobile's infringement allegations implicate other, "related servers." Mot. at 2 ("ExpressMo's infringement allegations in the FAC center on Moving Defendants' join.booking.com and ycs.agoda.com websites and related servers").

Indeed, each of the following additional websites is explicitly referenced in the infringement allegations in the FAC:

> https://partners.agoda.com/
> https://www.agoda.com/
> https://ycs.agoda.com/
> https://agodapropertyhelp.zendesk.com/
> https://connect.booking.com/
> https://developers.booking.com/
> https://join.booking.com/
> https://partner.booking.com/
> https://www.booking.com/
> https://help.opentable.com/
> https://platform.opentable.com/
> https://restaurant.opentable.com/
> https://support.opentable.com/
> https://www.opentable.com/

---

[2] A search on booking.com for a hotel in California for Feb. 1 – Feb. 4, 2022 returned 8.752 properties. Booking.com : Hotels in California . Book your hotel now!

6

1   https://www.priceline.com/

2   Neither the FAC nor the Motion alleges that any of these other sites used to provide the infringing

3   functionality are located on servers outside the United States.

4    In addition, although as discussed below the Court should ***not*** take judicial notice of alleged

5   server locations based on the IP location lookup services relied on in the Motion, if the Court

6   considers these extrinsic sources it should also take notice that the DNS lookup for Booking's main

7   site "www.booking.com," cited in paragraphs 166, 213, 266, and 325 of the FAC as illustrating the

8   functionality of the Accused Instrumentalities, results in IP address 185.28.222.11, which maps to

9   a location in the United States:

10
11
12
13   
14
15
16

17   https://mxtoolbox.com/SuperTool.aspx?action=a%3awww.booking.com&run=toolpage

18   Using Neustar's geolocation system to analyze the location of the IP address for Booking.com's

19   main site, www.booking.com, it shows that the hosting server is located in San Jose, California:

20
21
22
23
24
25
26
27

28

PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO  Case No. 3:20-cv-08491-RS
DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS

https://www.home.neustar/resources/tools/ip-geolocation-lookup-tool

As further examples, the Neustar website indicates that "account.booking.com" (185.28.222.40) and "secure.booking.com" (185.28.222.12) are also hosted on servers in the United States, as is Agoda's main website, www.agoda.com (for example, 104.68.118.117). In fact, Neustar identifies all of these servers as being located in San Jose, California.  Exs. E-G.

Further, when a Web page loads and is used, content and resources often originate from servers other than the one listed in the URL. For example, the Motion cites "join.booking.com" and "ycs.agoda.com" as key servers, yet each of these sites relies on U.S.-hosted functionality.  The "Get started" button on join.booking.com links to a URL on a different server, "account.booking.com," hosted in the United States. In addition, resources load from various U.S.-hosted servers: for example, on join.booking.com, resources load from servers including "cf.bstatic.com," and on ycs.agoda.com resources load from "cdn5.agoda.net" (104.68.118.118) and

8

1  "cdn6.agoda.net."  These servers are shown in Google Chrome developer mode:



11      These examples illustrate the gamesmanship underlying the Motion, including the Moving

12  Defendants' attempt to mischaracterize Express Mobile's allegations as implicating only servers

13  located outside the United States.  Full analysis of the territoriality issues raised in the Motion

14  requires consideration of information not yet produced by Moving Defendants, including

15  identification of the computers and servers that carry out the various elements of the claimed

16  invention.

17  **III.    ARGUMENT**

18      **A.    Applicable Legal Standards**

19      "Judgment on the pleadings is proper when the moving party clearly establishes on the face

20  of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment

21  as a matter of law." *Dworkin v. Hustler Magazine Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The

22  principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of

23  filing. Because the motions are functionally identical, the same standard of review applicable to a

24  Rule 12(b) motion applies to its Rule 12(c) analog."). Just like a 12(b)(6) motion to dismiss, when

25  considering a motion for judgment on the pleadings, the reviewing court "must accept all factual

26  allegations in the complaint as true and construe them in the light most favorable to the non-moving

27  party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219,

28                                                    9

1   1225 (9th Cir. 2004)).  In addition, "extrinsic factual material may not be taken into account" in a

2   motion for judgment on the pleadings.  *Qwest Communs. Corp. v. City of Berkeley*, 208 F.R.D. 288,

3   291 (N.D. Cal. 2002).

4        A defendant seeking judgment on the pleadings thus faces an exacting standard: "[j]udgment

5   may only be granted when the pleadings show that it is **beyond doubt** that the plaintiff can prove

6   **no set of facts** in support of his claim which would entitle him to relief." *Willner*, 35 F. Supp. 3d at

7   1123 (quoting *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th

8   Cir. 1997)) (emphasis added).  Defendants' Motion does not come close to meeting that standard.

9
    **B.    Extraterritoriality is a Factual Issue that Cannot be Resolved at the Pleadings
10            Stage.**

11       Courts "cannot resolve" allegations of extraterritoriality on the pleadings alone, "as the

12   question of the situs of use of a patent is a question of fact." *Tech. Patents, LLC v. Deutsche Telekom*

13   *AG*, 573 F. Supp. 2d 903, 921 (D. Md. 2008). Rather, "whether an allegedly infringing system is

14   capable of use as a whole 'within the United States' is a question of fact that turns on the unique

15   circumstances of a particular case." *Id.* (*citing NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282

16   (Fed. Cir. 2005); *Decca Ltd. v. United States*, 544 F.2d 1070, 210 Ct. Cl. 546 (Ct. Cl. 1976)).

17       Moreover, because the facts pled do not provide a basis to grant the Motion, Moving

18   Defendants improperly rely on unreliable extrinsic sources regarding alleged server locations.  *See,*

19   *e.g.,* Mot. 6-11. Nothing in the pleadings identifies the location of the "ycs.agoda.com" or

20   "join.booking.com" servers, much less any of the other servers used by Moving Defendants to

21   implement the Accused Instrumentalities.  Nor do the pleadings—or the Motion—address which

22   specific server(s) actually practice which of the accused claim elements or method steps.  Indeed,

23   Moving Defendants cite no authority requiring that all relevant servers and their specific locations

24   be specifically identified in the complaint. To the contrary, identifying a specific location in the

25   United States is ***not*** required.  *See Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-

26   CV-90-TJW, 2011 WL 1004873, at *12 (E.D. Tex. Mar. 18, 2011) ("the pleading requirement set

27   forth in *Twombly* and *Iqbal* do not require a patentee to specifically identify where in the United

28

10

1   States the accused products are made").   In sum, facts necessary for the Court to address the

2   territoriality issues raised by the Motion are simply unavailable to the Court at this time.

3       Given the exacting legal standards applicable to the Motion, it is not surprising that the

4   Moving Defendants fail to cite a single patent case where a court granted a motion for judgment of

5   non-infringement on the pleadings based on a territoriality challenge.   Indeed, other courts have

6   rejected similar motions.   In *Tech. Patents,* the court denied a motion to dismiss based on

7   extraterritoriality issues, both with respect to method claims and system claims.   The court noted

8   that the answers "turn on fact-specific inquiries of the allegedly infringing systems."   573 F. Supp.

9   2d  at 922.   Similarly, in *Perfect 10 v. OCOM B.V.*, a copyright defendant filed a motion to dismiss

10  based on the fact that its servers were overseas.   Ex. H, *Perfect 10 v. OCOM B.V.*, No. 2:14-cv-

11  00808, Dkt. No. 17, at 14-15 (C.D. Cal. Mar. 28, 2014).   The court denied the motion, stating that

12  the issues were "more appropriately resolved in a motion for summary judgment."   Ex. I, *Perfect

13  10*, No. 2:14-cv-00808, Dkt. No. 30, at 7 (C.D. Cal. Apr. 28, 2014).[3]   The same is true here.

### C.     The Court Should Deny Moving Defendants' Request to Take Judicial Notice of the Locations of Their Servers.

16      The Moving Defendants improper reliance on unreliable extrinsic sources is further reason

17  to deny the Motion. Courts may judicially notice a fact "that is not subject to reasonable dispute

18  because it . . . can be accurately and readily determined from sources whose accuracy cannot

19  reasonably be questioned." Fed. R. Evid. 201(b), 201(b)(2). The sources relied on by the Moving

20  Defendants do not meet this standard.

21      As an initial matter, the APNIC and Neustar geolocation services on which the Moving

22  Defendants rely (Mot. at 7, 10) are not relied on or cited in the FAC, or mentioned anywhere in the

---

[3] Converting this motion into a summary judgment motion would be improper at this early stage because Express Mobile has not had a sufficient opportunity for discovery on Moving Defendants' server locations and the functionality implemented at each location.  *See Innovative Sports Mgmt. v. Robles,* No. 13-CV-00660-LHK, 2014 WL 129308, at *10 (N.D. Cal. Jan. 14, 2014). ("The Court declines Defendants' invitation because the record contains little beyond the pleadings and only minimal discovery has occurred.").

11

pleadings. More importantly, ***the services themselves acknowledge they are not reliable***. APNIC's website, in addressing the question of "How accurate are IP geolocation services?," states that "[w]e found there are inaccuracies in the existing geolocation approaches when mapping end-to-end Internet paths to physical locations, with 77% of IPv4 and 65% of IPv6 economy-level mappings missing at least one economy along the path of our dataset." Ex. J at 1. APNIC thus recognizes that CDNs, which are used by Moving Defendants, play a role in these inaccuracies because "understanding the underlying physical paths connecting end points has become important and given rise to numerous approaches for inferring the location of infrastructure IP addresses." *Id*. Stated simply, geolocation services like APNIC have inherent inaccuracies, and Moving Defendants' use of CDNs exacerbates the issue and renders IP location services like APNIC even more unreliable.

Similarly, Neustar, a geolocation service on which the Moving Defendants then rely to pinpoint the geographic location of each IP address identified using APNIC, is likewise inaccurate. The "Neustar IP Intelligence FAQ" page recognizes that it is "hard to locate where an IP address is":

> **There is no direct relationship between the IP address system and your location**. Unlike a land-based phone number (land line), where the area code often indicates the caller's geographic area, an IP address is usually associated with the organization, like an Internet service provider, to which it has been allocated. And, because IP addresses are often reused, any location information previously determined becomes out of date when a new device gets that address.

Ex. K (emphasis added). Even more telling is Neustar's admission that its service enables users to make nothing more than "an informed 'guess' as to city, zip code, state, and country where the current device associated with that IP address is located." *Id*. These services are thus anything but sources "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), 201(b)(2).

The cases cited by Moving Defendants in support of their request for judicial notice are

12

1    distinguishable. *Millennium* relates to a plaintiff's effort to take third-party discovery to identify

2    users of the BitTorrent peer-to-peer file sharing protocol to share copyrighted material. *Millenium*

3    *TGA v. Doe*, 2011 WL 7444064, Case No. 10-C-5603 at *1 (N.D. Ill. Sept. 26, 2011). Specifically,

4    Millennium sought to subpoena an Internet service provider to identify the name and address of a

5    Doe defendant. *Id*. The court dismissed the case because *Millenium* failed to provide "detail" as to

6    why the IP address in question failed to adequately show that the defendant Doe resided outside of

7    the court's jurisdiction. *Id*. at *2-3. The case did not specifically relate to judicial notice of server

8    locations, but rather Millenium's failure to provide evidence as to why the geolocation information

9    was inaccurate. Similarly, *Perea-Rey* does not relate to judicial notice of server locations based on

10   IP addresses. *U.S. v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012). Instead, *Perea-Rey* relates to judicial

11   notice of online maps and satellite images, "whose accuracy cannot reasonably be questioned," used

12   to "determin[e] the general location of the home" in which an arrest was made by Border Patrol

13   agents. *Perea-Rey* at 1182, n.1 (citation omitted).

14         **D.      Moving Defendants Have, to Date, Failed to Provide Meaningful Discovery on**
15              **Their Server Locations.**

16         The Motion should be denied for the additional reason that Express Mobile has sought

17   discovery on the territorial issues raised in the Motion, but to date Moving Defendants have refused

18   to provide meaningful information. For example, Moving Defendants have failed to produce

19   documents responsive to Express Mobile Request for Production No. 48, which seeks, "[f]or each

20   Accused Product, Documents sufficient to identify any servers, data centers, or databases that

21   support the Accused Products." Ex. L (Apr. 26, 2021 Defendants' Objections and Responses to

22   Plaintiff's First Set of Requests for Production (Nos. 1-55)). It would be inequitable to consider

23   Moving Defendants' evidence from outside the pleadings when Moving Defendants have

24   stonewalled Express Mobile's discovery requests on the very same issue and failed to provide the

25   relevant facts.

26

27

28                                         13

E.    **The Moving Defendants' Case Law Does Not Support Judgment of No Direct Infringement on the Pleadings.**

The Moving Defendants principally rely on *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282 (Fed. Cir. 2005), a case that was not decided at the pleadings stage. In *NTP*, evidence presented at trial established that one of the steps of the asserted method claim was "only satisfied by the use of RIM's Relay located in Canada." *Id*.    Here the Moving Defendants fail to point to a single method step of a single asserted claim that is allegedly not performed in the United States.  Indeed, the Motion makes only hand-waving arguments about server locations without discussing a single asserted claim, much less establishing that servers outside the U.S. are the only servers used to satisfy one or more of the claimed method steps.  And, as discussed above, there is more than a plausible basis to believe that the Moving Defendants employ U.S.-based servers and CDNs to practice the claimed methods in the U.S.

With respect to that asserted system claims, "[t]he use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." *NTP*, 418 F.3d at 1317 (citing *Decca*, 544 F.2d at 1083).  As with the method claims identified in the FAC, the Moving Defendants do not even argue that the servers allegedly located outside the U.S. are the only servers that can satisfy even a single component of an asserted system claim.  Moreover, the Moving Defendants fail to address the fact that the location of one component of a system in a foreign country "does not, as a matter of law, preclude infringement." *NTP*, 418 F.3d at 1317.

The Motion also omits that the *NTP* court found that "RIM's customers located within the United States controlled the transmission of the originated information and also benefited from such an exchange of information," therefore placing infringement of the system claims in the United States. *Id*. The same analysis applies here.

For example, consider claim 1 of the '044 patent, which reads:

1.  A system for generating code to provide content on a display of a device, said system comprising:
computer memory storing:

a) symbolic names required for evoking one or more web components each related to a set of inputs and outputs of a web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service, where each symbolic name has an associated data format class type corresponding to a subclass of User Interface (UI) objects that support the data format type of the symbolic name, and where each symbolic name has a preferred UI object, and

b) an address of the web service;

an authoring tool configured to:

define a UI object for presentation on the display,

where said defined UI object corresponds to a web component included in said computer memory selected from a group consisting of an input of the web service and an output of the web service, where each defined UI object is either:

1) selected by a user of the authoring tool; or

2) automatically selected by the system as the preferred UI object corresponding to the symbolic name of the web component selected by the user of the authoring tool,

access said computer memory to select the symbolic name corresponding to the web component of the defined UI object,

associate the selected symbolic name with the defined UI object, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name,

store information representative of said defined UI object and related settings in a database;

retrieve said information representative of said one or more said UI object settings stored in said database; and

build an application consisting of one or more web page views from at least a portion of said database utilizing at least one player, where said player utilizes information stored in said database to generate for the display of at least a portion of said one or more web pages,

wherein when the application and player are provided to the device and executed on the device, and

when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object, the device provides the user provided one or more input values and corresponding input symbolic name to the web service, the web service utilizes the input symbolic name and the user provided one or more input values for generating one or more output values having an associated output symbolic name,

and the player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.

Here, end users exercise control over the system and provide an input value associated with

15

1  a selected hotel. FAC ¶¶ 149-60. Further, they receive the benefit of the system when property

2  listings advertising their properties are posted in response to a search. FAC ¶ 160. This confirms

3  that the function used by the end user is the same as the function to which the claimed system is

4  directed.  *See epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F.Supp.2d 608, 614 (E.D.

5  Tex. 2007). ("Importantly, the claimed system in *NTP* was directed to a system for the transmission

6  of messages . . . and that is exactly the function that the defendant's customers controlled. Thus, the

7  defendant's customers were users of the system.").

8        Other cases have similarly found that end users control a web server. For example, in

9  *Soverain Software LLC v. Newegg Inc.*, end users were found to both control the system and obtain

10 beneficial use of the website. *Soverain Software LLC v. Newegg Inc.*, 836 F. Supp. 2d 462, 473

11 (E.D. Tex. 2010), *rev'd on other grounds*, 705 F.3d 1333 (Fed. Cir. 2013), *amended on reh'g*, 728

12 F.3d 1332 (Fed. Cir. 2013). "Newegg's customers control the operation of Newegg's sales system

13 by choosing the products to purchase, when to checkout, and when to submit an order, and they

14 control Newegg's hypertext-statement system by choosing to view their order history and

15 transaction details." *Id*.  Further, the court found that end users "use and benefit from Newegg's

16 systems when they purchase products and view their order histories." *Id*.

17       In *Nuance Communications v. Tellme Networks, Inc.*, the court reached a similar conclusion

18 by finding that end users could exercise control over and obtain benefit from a telephone directory

19 system.  *Nuance Commc'ns Inc. v. Tellme Networks Inc.*, 707 F. Supp. 2d 472, 483 (D. Del. 2010).

20 The court found that "a reasonable jury could conclude that a consumer exerts control over the

21 system by specifying the information that the accused services must retrieve to complete the task . .

22 .  as well as the format in which the task will be completed." *Id*.

23       Moving Defendants mischaracterize *NTP* and *Centillion Data Sys., LLC v. Qwest Comm.

24 *Int., Inc.*, 631 F.3d 1279 (Fed. Cir. 2011), in arguing that an end user must be able to "change the

25 programming, turn on/off servers, or direct the flow of data in either the Booking Platform or the

26 YCS Platform." Mot. at 17-18.   Indeed, none of the asserted claims recite these particular

27 limitations. *Centillion* merely confirms *NTP*'s holding that an end user need not "exercise physical

28

16

1   or direct control over each individual element of the system" in order to use the system. *Centillion*,

2   631 F.3d at 1284.  The Federal Circuit ultimately held that end users' operation of the accused

3   system was a "use" as a matter of law. *Id.* at 1285.

4          The other cases the Moving Defendants cite are also distinguishable. The patent at issue in

5   *epicRealm* was directed to software that managed incoming web page requests. *epicRealm*, 492

6   F.Supp.2d at 615.  In finding no infringing use, the *epicRealm* Court explained that "the claimed

7   system in *NTP* was directed to a system for the transmission of messages, and that is exactly the

8   function that the defendant's customers controlled." *Id.* (internal citations omitted). By contrast, the

9   website visitors in *epicRealm*, "who send requests to a web server and receive a response[,] do not

10  control the operations of [the accused software] in managing incoming web page requests." *Id.*

11  Here, however, the asserted claims are not directed to a system for managing incoming page

12  requests, but rather a system used, *e.g.*, to search for and display property listings. In the accused

13  systems, the display of properties in connection with an end user's search for specific property

14  listings (*e.g.*, in a specific geographic region) is indeed controlled by the end user.

15         Further, *Uniloc* did not consider extraterritoriality issues, but instead dealt with a

16  noninfringement argument that "Microsoft did not supply or use the end-users' computers that

17  implemented the local licensee unique ID generating means." *Uniloc USA, Inc. v. Microsoft Corp.*,

18  632 F.3d 1292, 1308 (Fed. Cir. 2011). The Federal Circuit rejected the theory that there was a

19  divided infringement problem, but did not address the key questions here of control and benefit.

20  Moving Defendants do not argue in their motion that any divided infringement problem exists here.

21         Finally, regardless of whether end users control and benefit from the system, the FAC alleges

22  that U.S.-hosted servers implement the system. A system that is both hosted and used in the United

23  States can by definition present no extraterritoriality issues. Even if some components are hosted

24  outside the United States, that "[does] not, as a matter of law, preclude infringement."  *NTP*, 418

25  F.3d at 1317.

26         In sum, the Moving Defendants' superficial arguments do not come close to meeting their

27  burden of demonstrating that "it is **beyond doubt** that [Express Mobile] can prove **no set of facts**

                                              17

1    in support of" its infringement claim.

2        **F.    Moving Defendants do not Address Express Mobile's Indirect Infringement**

3            **Contentions.**

4        The Motion is unclear as to whether it seeks judgment of non-infringement as to both direct

5    and indirect infringement, perhaps intentionally so because it completely ignores Express Mobile's

6    allegations of indirect infringement. FAC ¶¶ 10, 14, 15, 97, 169, 216, 269, 328. Indeed, even if

7    Moving Defendants committed no acts of direct infringement within the United States, they could

8    still be liable for inducing others in the U.S. to infringe the Asserted Patents. "Unlike direct

9    infringement under 35 U.S.C. § 271(a), which must occur in the United States, liability for induced

10   infringement under § 271(b) can be imposed based on extraterritorial acts, provided that the patentee

11   proves the defendant possessed the requisite knowledge and specific intent to induce direct

12   infringement in the United States." *Enplas*, 909 F.3d at 408 (citing *Merial Ltd. v. Cipla Ltd.*, 681

13   F.3d 1283, 1302–03 (Fed. Cir. 2012)).

14       Express Mobile asserts that requisite knowledge and intent with specificity. For example,

15   with respect to the '397 patent, Express Mobile alleges in the FAC: "On information and belief,

16   Defendants engaged in such actions with specific intent to cause infringement or with willful

17   blindness to the resulting infringement because Defendants had actual knowledge of the '397 patent

18   and knowledge that their acts were inducing infringement of the '397 patent since at least the date

19   Defendants received notice that their activities infringed the '397 patent." FAC ¶ 98. These same

20   allegations are repeated for each of the asserted patents. FAC ¶ 170 ('168 Patent), 217 ('755 Patent),

21   270 ('287 Patent), 329 ('044 Patent). As pled, Moving Defendants' customers *(e.g.*, hotel owners)

22   practice the asserted claims within the United States, amounting to direct infringement, and Moving

23   Defendants' activities—regardless of where those activities take place—knowingly induced that

24   infringement. *See Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1023

25   (N.D. Cal. 2019) (denying motion for summary judgment based on extraterritorial sales because

26                                              18

27   PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO        Case No. 3:20-cv-08491-RS
28   DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS

direct infringement by defendant's customers allegedly occurred in United States and holding that "because § 271(b) 'contains no such territorial proscription,' liability for induced infringement can arise 'where a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States.'") (quoting *Merial*, 681 F.3d at 1302). Thus, taking all factual allegations from the complaint as true, and considering the well-pled allegations of both inducement and Moving Defendants' requisite knowledge, the Court should not grant this Motion.

### G.     Moving Defendants Arguments Concerning "Making" Similarly Fall Flat.

Moving Defendants argue that any infringement theory based on "making" an infringing system in accordance with § 271(a) is flawed because "Defendants Booking-BV and Agoda are wholly owned foreign entities with servers located overseas . . . ." Mot. at 18. For the reasons discussed above, Moving Defendants have not even approached the requisite threshold for showing that all of their servers that include infringing elements are located overseas. For this reason alone Moving Defendants' arguments fail to suggest that they cannot be liable for "making" an infringing system under the factual allegations as pled in Express Mobile's complaint.

## IV.     CONCLUSION

For all the foregoing reasons, the Motion should be denied.

19

Respectfully submitted,

Date:    January 13, 2022        **McKool Smith P.C.**

/s/ *Steven Rizzi*
By:    Steven Rizzi
Kirk D. Dillman (SBN 110486)
kdillman@mckoolsmithhennigan.com
Alan P. Block (SBN 143783)
ablock@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200

Steven Rizzi
srizzi@McKoolSmith.com
Ramy E. Hanna
rhanna@McKoolSmith.com
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, NY 10001-8603
Telephone: (212) 402-9400

Christopher P. McNett (SBN 298893)
cmcnett@mckoolsmith.com
MCKOOL SMITH, P.C.
1100 15th Street, NW
5th Floor
Washington, DC 20005
Telephone: (212) 402-9400

Scott W. Hejny (admitted *pro hac vice*)
shejny@mckoolsmith.com
MCKOOL SMITH, P.C.
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000

*ATTORNEYS FOR EXPRESS MOBILE, INC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2022 the within document was filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the attorneys of record in this case.


*/s/ Steven Rizzi*
Steven Rizzi

PLAINTIFF EXPRESS MOBILE, INC.'S OPPOSITION TO          Case No. 3:20-cv-08491-RS
DEFTS' MOTION FOR JUDGMENT ON THE PLEADINGS