# EXHIBIT H

Michele Floyd (SBN 163031)
michele@zwillgen.com
Anna Hsia (SBN 234179)
anna@zwillgen.com
ZWILLGEN LAW, LLP
915-2 Battery Street, 2d Floor
San Francisco, CA 94111
Telephone: (415) 590-2335
Facsimile:  (415) 445-0908

Attorneys for Defendant
**LEASEWEB USA, INC.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | Case No. CV14-00808-JFW (VBKx) |
| Plaintiff, | **DEFENDANT LEASEWEB USA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| OCOM B.V., a Netherlands Limited Liability Company, et al., | Date: April 28, 2014<br>Time: 1:30 p.m.<br>Dept.: 16 – Spring Street Floor<br>Judge:  Honorable John F. Walter |
| Defendants. | FAC Filed:  March 4, 2014 |

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on April 28, 2014 at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable John F. Walter, in Courtroom 16 of the United States Courthouse for the Central District of California, Western Division, 312 North Spring Street, Los Angeles, California, Defendant LeaseWeb USA, Inc. ("LeaseWeb USA") will and hereby does move the Court to dismiss the First Amendment Complaint for Copyright Infringement pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Federal Rule Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 26, 2014. The parties scheduled the conference immediately after being notified that the Court had denied their stipulated briefing schedule. Counsel were unable to reach a resolution of this motion.

As set forth in the accompanying Memorandum of Points and Authorities and the attached declarations in support, there is good cause for the relief requested. Personal jurisdiction is lacking over LeaseWeb USA, a Delaware Corporation based in Manassas, Virginia, based on conduct related to LeaseWeb USA's provision of dedicated hosting to customers located in Venezuela and Argentina.

Plaintiff Perfect 10, Inc. ("P10") also fails to state a claim for copyright infringement upon which relief may be granted. First, the Copyright Act does not reach images hosted on servers located overseas, and to the extent P10 asserts claims against LeaseWeb USA based upon other defendants' hosting of images on foreign servers, those claims must be dismissed. Second, P10's claims for direct copyright infringement fail because P10 has failed to adequately allege that LeaseWeb USA acted with volition to cause any infringement. Finally, P10's claims for contributory infringement fail because there is no underlying

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

infringement for claims based on images hosted on servers outside the United States, P10 does not adequately allege which website directly infringed which copyrighted images, who the direct infringers were or that LeaseWeb USA had actual knowledge of the specific infringing material, and P10 does not allege that LeaseWeb USA induced, caused, or materially contributed to the infringing conduct.


DATED:  March 28, 2014                    **ZWILLGEN LAW LLP**


By:  /s/ Anna Hsia
_____
        Anna Hsia SBN 234179
        anna@zwillgen.com
        **Attorneys for Defendant**
        LEASEWEB USA, INC.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................... 4

     A.   LeaseWeb USA, Inc. ........................................................................ 4

     B.   Perfect 10, Inc. .................................................................................. 4

     C.   LeaseWeb USA's Alleged Misconduct ...................................... 5

     D.   LeaseWeb USA's Lack of Connections to California .............. 6

     E.   Plaintiff's Claim ............................................................................... 6

III. ARGUMENT ................................................................................................ 7

     A.   LeaseWeb USA is Not Subject to Jurisdiction in California .... 7

          1.   LeaseWeb USA is Not Subject to General Jurisdiction ........ 7

          2.   LeaseWeb USA Is Not Subject to Specific Jurisdiction ....... 9

     B.   Legal Standard For Motion to Dismiss For Failure to State a Claim ....... 13

          1.   All Claims Based on Allegedly Infringing Material Hosted on
               Foreign Servers Should be Dismissed with Prejudice .................. 13

          2.   The Direct Infringement Claim Must be Dismissed Because P10
               Has Not Alleged Volitional Conduct ............................................... 15

          3.   P10's Contributory Infringement Claim Must Be Dismissed
               Because It Has Not Adequately Alleged Third-Party Direct
               Infringement, Knowledge by LeaseWeb USA, or Sufficient
               Contribution by LeaseWeb USA to the Infringement ................... 17

               a)   *P10 Fails to Allege Direct Infringement by a Third Party* .. 18

               b)   *Plaintiff Fails to Allege Actual Knowledge of Infringement* 19

               c)   *Plaintiff Fails to Allege that LeaseWeb USA Induced, Caused
                    or Materially Contributed to the Infringing Conduct* .......... 19

IV. CONCLUSION ........................................................................................... 22

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)...............................................14, 15, 17, 18

*Adobe Systems, Inc. v. Trinity Software Distribution, Inc.*,
No. C 12-1614 SI, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) ..............9

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010).................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................13, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................13, 15

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008)......................................................................9

*Calder v. Jones*,
465 U.S. 783 (1984) ...................................................................................10

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)....................................................................20

*Costar Group v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004)........................................................15, 16, 17

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*,
12-55338, 2013 WL 6068586 (9th Cir. Nov. 19, 2013) .............................10

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ..............................................................................7, 8

*Flava Works, Inc. v. Gunter*,
No. 10 C 6517, 2012 WL 6215627 (N.D. Ill. Dec. 13, 2012) ...................14

*Fox Broadcasting Co., Inc. v. Dish Network LLC*,
No. 12-57048, --- F.3d ---, 2014 WL 260572 (9th Cir. Jan. 24, 2014).....15

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Fox Broadcasting Co., Inc. v. Dish Network, L.C.C.*,
   905 F. Supp. 2d 1088 (C.D. Cal. 2012)....................................................16

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*,
   284 F.3d 1114 (9th Cir. 2002)...................................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011) ..............................................................................7

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007)...................................................................10

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   658 F.3d 936 (9th Cir. 2011)...................................................................21

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013)...........................................................17, 19

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
   647 F.3d 1218 (9th Cir. 2011).............................................................9, 11

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007).................................................................11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ......................................................................17, 19, 20

*Moses v. Youtube, Inc.*,
   No. 12-2822-JPM-dkv, 2014 WL 549205 (W.D. Tenn. Feb. 11, 2014) ..................18

*Nationaleft, Inc. v. Checkgateway, LLC*,
   No. 12cv1498-WQH-JMA, 2013 WL 593759 (S.D. Cal. Feb. 15, 2013) ..................7

*Nobelbiz, Inc. v. Veracity Networks, LLC*,
   13-CV-2518 YGR, 2013 WL 5425101 (N.D. Cal. Sept. 27, 2013)..........................10

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006) ......................................................15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007).........................................................12, 13, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV11-07098 AHM (SHx), 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013)..........15

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Perfect 10, Inc. v. Google, Inc.*,
  No. CV 04-9484 AHM (SHx), 2010 WL 9479060 (C.D. Cal. July 30, 2010) .... 12, 14

*Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*,
  No. C 04-00371 JW, 2004 WL 3217732 (N.D. Cal. Dec. 3, 2004) ........................... 21

*Perfect 10, Inc. v. Yandex N.V.*,
  No. C 12-01521 WHA, 2013 WL 4777189 (N.D. Cal. Sept. 6, 2013) .......... 12, 13, 14

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952) ........................................................................................................ 8

*Resolution Trust Corp. v. First of Am. Bank*,
  796 F. Supp. 1333 (C.D. Cal. 1992) .......................................................................... 12

*Terraspan, LLC v. Rave, LLC*,
  No. 3:12-CV00816-K, 2012 WL 6115721 (N.D. Tex. Dec. 10, 2012) ..................... 18

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ...................................................................................... 8

*United States v. Ctr. For Diagnostic Imaging, Inc.*,
  787 F. Supp. 2d 1213 (W.D. Wash. 2011) ................................................................. 18

**Statutes**

17 U.S.C. § 512(a) ............................................................................................... 3, 11, 15

17 U.S.C. § 512(b) ..................................................................................................... 15

Federal Rule of Civil Procedure Section 12(b)(2) .................................................. 4, 22

Federal Rule of Civil Procedure Section 12(b)(6) .................................................. 4, 22

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

-4-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is the latest in the long line of copyright cases brought by Plaintiff Perfect 10, Inc. ("P10") against webhosts, search engines, and other entities based on alleged infringements committed by third parties unaffiliated with defendants. This time, P10 brings copyright infringement claims against LeaseWeb USA, Inc. ("LeaseWeb USA"), LeaseWeb Netherlands B.V., formerly known as LeaseWeb B.V., ("LeaseWeb Netherlands"), LeaseWeb Deutschland GmbH ("LeaseWeb Germany"), and Ocom B.V. ("Ocom"). LeaseWeb USA is a back-end business-to-business provider of dedicated servers used to host websites. It provides those servers and Internet connectivity to users that sign up through its website, leaseweb.com. Once users sign up for LeaseWeb USA's services, they are provided with servers they may use for any purpose, and LeaseWeb USA does not have access to customers' data on those servers.

P10's claims arise out of LeaseWeb USA's alleged failure to remove specific infringing images from its customers' websites in response to "DMCA" notices. These notices, however, were not served on the entities responsible for running the sites where the images were allegedly found—poringa.net, ultraforos.com, ultraforos.net, etc.—but on LeaseWeb USA itself, which merely provides servers and connectivity to those sites (in the case of poringa.net, indirectly). If successful, P10's claims would stretch copyright infringement law to hold web hosts liable for copyright infringement by users of third party websites—users with whom they have no contact. But as with most of its previous efforts, P10's claims against LeaseWeb USA fail, both because this court lacks jurisdiction over LeaseWeb USA, and P10 has failed to state a claim for copyright infringement.

First, this Court does not have personal jurisdiction over LeaseWeb USA. LeaseWeb USA has no offices, employees or bank accounts in California. The

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

allegedly infringing websites LeaseWeb USA hosted are not owned or operated by California companies. None of the allegedly infringing websites are hosted in California. Haling LeaseWeb USA into a California court based on contracts with foreign entities that themselves did nothing to aim their conduct at California offends notions of fair play and justice. Without jurisdiction, this case must be dismissed.

Second, controlling Ninth Circuit law holds that the location of servers hosting allegedly infringing images determines the location of the images. Because the Ninth Circuit has held that the U.S. Copyright Act does not apply to images hosted abroad, any claims against LeaseWeb USA based upon other defendants' hosting of images on foreign servers must be dismissed.[1]

Third, P10's direct copyright infringement claims against LeaseWeb USA must be dismissed because P10 has failed to adequately allege that LeaseWeb USA acted with volition to cause any infringement. P10 alleges only that LeaseWeb USA provided backend dedicated hosting services to third parties whose users allegedly uploaded infringing images. But providers like LeaseWeb USA that offer dedicated hosting services are merely passive conduits, and they cannot be held liable for direct infringement absent allegations they volitionally acted to *cause* the infringement. Holding providers like LeaseWeb USA directly liable for infringement without alleging the hosting provider itself engaged in the allegedly infringing activity would extend liability for direct copyright infringement beyond existing case law.

---

[1] The First Amended Complaint incorrectly identifies imgchili.net, imgchili.com, imgtiger.com, imgserve.net, and Galleryworld.info as being hosted by other Defendants in the United States. This is false, but for purposes of this motion to dismiss, LeaseWeb USA assumes these allegations as true. To the extent P10 alleges that LeaseWeb USA should be liable for other defendants' conduct, claims based on images hosted by these websites should be dismissed for the same reasons as those applicable to sites hosted by LeaseWeb USA in the United States.

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

Fourth, P10's claims for contributory infringement fail for three reasons. For one, P10 has not adequately alleged an underlying direct infringement. For sites other defendants hosted outside the United States, there is no direct infringement because the U.S. Copyright Act does not reach them. And for sites allegedly hosted in the United States, P10 does not allege which website directly infringed which copyrighted images, when the infringement occurred, or whether the sites hosted by LeaseWeb USA were direct infringers or whether *users* of those sites were the direct infringers. Having failed to adequately allege an underlying direct infringement, P10's contributory infringement claim fails.

The contributory infringement claim also fails because P10 does not adequately allege that LeaseWeb USA had *actual* knowledge of the specific infringing material. P10 alleges only that it provided cursory "DMCA notices" to LeaseWeb USA, but does not allege that those notices provided LeaseWeb USA with the information necessary to establish actual notice.

Finally, the contributory infringement claim fails because P10 does not allege that LeaseWeb USA induced, caused, or materially contributed to the infringing conduct. Nowhere does P10 allege that LeaseWeb USA acted with culpable intent or an unlawful objective. Instead, P10 alleges the opposite—that LeaseWeb USA provided neutral dedicated hosting services to third-party sites whose users may have uploaded allegedly infringing images. Nowhere does P10 allege that LeaseWeb USA promoted its dedicated hosting services for copyright infringement. And the DMCA protects LeaseWeb USA's ability to route traffic which may contain infringing material. 17 U.S.C. § 512(a). Nowhere does P10 allege that LeaseWeb USA assisted any direct infringers. Rather, this case represents an effort to hold liable anyone in the internet landscape that provides any support or connectivity to websites whose users may have uploaded infringing images.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

-3-

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Without these key allegations, the contributory infringement claims must be dismissed.

P10's claims for copyright infringement should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II. STATEMENT OF FACTS

### A. LeaseWeb USA, Inc.

LeaseWeb USA is a Delaware corporation registered to do business in Virginia. First Amended Complaint ("FAC") ¶ 11. Its headquarters and principal place of business is in Manassas, Virginia. *See* FAC ¶ 11; Declaration of Dewey Coerper in Support of LeaseWeb USA, Inc's Motion to Dismiss First Amended Complaint ("Coerper Decl.") ¶ 3. LeaseWeb USA's *only* server facility used to host websites is also in Manassas. Coerper Decl. ¶ 6.

LeaseWeb USA is a backend business-to-business dedicated hosting service provider that provides connectivity and services to third-parties so they can host websites on LeaseWeb USA's servers in Virginia. FAC ¶¶ 28, 30. As P10 recognizes throughout the FAC, LeaseWeb USA does not itself directly copy, distribute or display content or images over the Internet, nor does it run or administer user generated content sites that could contain infringing images users uploaded. Instead, P10's claims for direct infringement are based solely on LeaseWeb USA's provision of dedicated hosting to third parties, not any affirmative action LeaseWeb USA itself has taken. *See e.g., id.*

### B. Perfect 10, Inc.

P10 is a California corporation allegedly in the business of the production and sale of copyrighted adult entertainment. FAC ¶ 19.[2] P10 previously published "the

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

---

[2] The stated facts are based on allegations in the FAC, and LeaseWeb USA assumes these facts as true only for purposes of this motion to dismiss.

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

well-known magazine PERFECT 10," which it claims to have closed "because of rampant infringement." *Id.* at ¶ 20. The FAC alleges that today Perfect 10's derives its revenues "predominantly from sales of memberships to its perfect10.com website" which "features tasteful images of natural models." *Id.* at ¶¶ 22-23. Those current revenues are roughly $70,000 a year. FAC ¶ 26. P10 is better known, however, for bringing a string of copyright infringement lawsuits against a variety of service providers, including Google, MasterCard, Visa, Amazon.com, and Microsoft among others, seeking to hold them liable for alleged infringing activity of others on the Internet.

## C. LeaseWeb USA's Alleged Misconduct

P10 alleges that LeaseWeb USA's customers, not LeaseWeb USA itself, were involved in the distribution and display of allegedly infringing images. FAC ¶ 28. P10 alleges only that LeaseWeb USA provided dedicated hosting services to various websites where the images were located. FAC ¶¶ 28, 30, 31.

P10 alleges that beginning in February 2013, it provided "the LeaseWeb Defendants" with "at least 22 DMCA notices that have identified at least 12,220 infringing Perfect 10 images the LeaseWeb Defendants are making available for viewing and copying, to millions of users." FAC ¶ 34. P10 alleges that each defendant "could have and should have ended the infringement by processing Perfect 10's DMCA notices and removing the infringing images or by refusing to host the identified allegedly infringing websites." *Id.* at ¶ 35.

Despite claims it cannot identify the owners of the allegedly infringing websites (FAC ¶ 27), P10 identifies eight third-party websites it asserts improperly displayed its copyrighted images. FAC ¶ 30. Those websites are: imgchili.net; imgchili.com; imgtiger.com; imgserve.net; poringa.net; ultraforos.com; ultraforos.net; and galleryworld.info. *Id.* Although P10 alleges that the LeaseWeb Defendants hosted eight websites "on their servers located in Manassas, Virginia," it

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

concedes that LeaseWeb USA hosted only three sites:  poringa.net, ultraforos.com, and ultraforos.net.  *Id.*  Plaintiff alleges the remaining websites were hosted by either LeaseWeb Netherlands or LeaseWeb Germany.  *Id.*  Plaintiff alleges eleven additional websites were or are hosted on servers in Germany or the Netherlands, including pelotka.com, kadets.info, e-hentai.org, ero-advertising.com, fuskator.com, and imgdino.com.  FAC ¶ 32.

### D.  LeaseWeb USA's Lack of Connections to California

LeaseWeb USA is a Delaware corporation with its principal place of business in Manassas, Virginia.  FAC ¶ 11; Coerper Decl. ¶ 3.  LeaseWeb USA has no offices or employees in California—all of its employees are located in Virginia, Colorado, and Massachusetts.  Coerper Decl. ¶ 6.  While LeaseWeb USA operates certain networking equipment in California, that equipment is used solely to route traffic.  *Id.* at ¶ 8.  None of the websites listed in the First Amended Complaint as LeaseWeb USA clients are operated by companies based in California or are hosted on servers in California.  *Id.* at ¶ 9.  LeaseWeb USA does not have an agent for service of process in California.  *Id.* at ¶ 7.  It has no bank accounts in California.  Coerper Decl. ¶ 7.

None of LeaseWeb USA's customers who operate allegedly infringing websites are in California.  *Id.* at ¶ 9.  The operator of Ultraforos.com and Ultraforos.net is in Venezuela, and Poringa.net is a client of Wiroos, a reseller of LeaseWeb USA's dedicated hosting located in Argentina.  *Id.*  Both are (or were at the relevant times) hosted on servers in Manassas, Virginia, not California.  *Id.*

### E.  Plaintiff's Claim

P10 alleges a single cause of action for copyright infringement against all defendants, asserting they engaged in both direct and contributory infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 106 and 501.  *See, e.g.*, FAC ¶¶ 40, 44 (alleging direct and contributory infringement against LeaseWeb

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

USA). The FAC does not, however, identify or distinguish between the specific acts that allegedly constitute direct infringement and those that allegedly constitute contributory infringement.

## III. ARGUMENT

### A. LeaseWeb USA is Not Subject to Jurisdiction in California

Federal courts may exercise personal jurisdiction over a defendant under principles of either general or specific jurisdiction. P10 cannot meet either standard.

#### 1. LeaseWeb USA is Not Subject to General Jurisdiction

Because LeaseWeb USA lacks connections to California, this Court lacks general jurisdiction over it. As the Supreme Court recently recognized in *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014), "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." The fact that a corporation "engages in a substantial, continuous, and systematic course of business" in the state is not enough. *Bauman*, at 760-61. The test does not focus on a corporation's in-forum contacts, but "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at n.20; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011) (doing business in a state does not subject a corporation to a state's general jurisdiction); *see also Nationaleft, Inc. v. Checkgateway, LLC*, No. 12cv1498-WQH-JMA, 2013 WL 593759, at *6 (S.D. Cal. Feb. 15, 2013) (no general jurisdiction over defendant that provided services to 1,000 California merchants to process California transactions). General jurisdiction may only be asserted where the corporation's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citations omitted).

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

Two examples illustrate when corporations are "at home" in a state.  In *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), the only case where the Supreme Court found general jurisdiction over a non-resident defendant, the Supreme Court held that an Ohio court could assert general jurisdiction over a defendant where the defendant's president (1) maintained a home in Ohio; (2) ran a corporate office in Ohio; (3) kept business files in Ohio; (4) handled corporate correspondence in Ohio; (5) drew salaries from Ohio bank accounts; (6) distributed paychecks from Ohio; and (7) held directors' meetings in Ohio.  *Id.* at 447-48.  Likewise, in *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006), the Ninth Circuit held that general jurisdiction existed in Washington over a North Carolina company where defendant (1) had been licensed to do business in Washington for over 60 years; (2) had advertised in purely local publications for over 50 years; (3) maintained a permanent office in Washington; (4) maintained a workforce in Washington; (5) engaged in Washington political activity; and (6) commanded 29-31% of the Washington tobacco market share.  *Id.* at 1167-68, 1175.

Unlike the defendants in *Perkins* and *Tuazon*, LeaseWeb USA is not "at home" in California.  For corporations, "the place of incorporation and principal place of business are the paradigm bases for general jurisdiction."  *Bauman*, at 760 (internal quotations omitted).  But LeaseWeb USA is incorporated in Delaware and maintains its principal place of business in Virginia.  Coerper Decl. ¶ 3.  It has no employees in California.  *Id.* at ¶ 6.  It has no offices in California.  *Id.*  It has no bank accounts in California.  *Id.* at ¶ 7.  It has no designated agent for service of process in California.  Coerper Decl. ¶ 7.  None of the allegedly infringing websites hosted by LeaseWeb USA are hosted in California.  *Id.* at ¶¶ 9, 10.  None of the owners of the allegedly infringing websites hosted by LeaseWeb USA are in California.  *Id.*[3]  Thus, no general jurisdiction exists over LeaseWeb USA.

---

[3] Nor can simply hosting a website accessible by California residents suffice to support general jurisdiction.  *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*,

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

## 2.     LeaseWeb USA Is Not Subject to Specific Jurisdiction

The Court also does not have specific jurisdiction over LeaseWeb USA because P10's claims do not arise out of any activity of LeaseWeb in California. Specific jurisdiction exists only where "the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit applies a three-prong test to determine if specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities, or consummate some transaction with the forum or resident thereof; or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008) (quotation omitted). Plaintiff bears the burden on the first two prongs. If plaintiff cannot establish the first two prongs, as is the case here, the case must be dismissed. *Id.*

P10 cannot establish that LeaseWeb USA purposefully directed its activities to California. For copyright infringement matters, courts apply a purposeful direction analysis—namely, did defendant purposefully direct its activities toward the Central District of California? *See, e.g.*, *Adobe Systems, Inc. v. Trinity Software Distribution, Inc.*, No. C 12-1614 SI, 2012 WL 3763643, at *5 (N.D. Cal. Aug. 29, 2012). Here, the Court should assess whether defendant (1) committed an

_____

647 F.3d 1218, 1227 (9th Cir. 2011) (providing a website in California does not support general jurisdiction).

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  intentional act, which was (2) expressly aimed at the Central District of California;

2  and (3) caused harm, the brunt of which is suffered and which the defendant knows

3  is likely to be suffered in the Central District of California. *Calder v. Jones*, 465

4  U.S. 783 (1984). P10 cannot establish purposeful direction.

5      P10 bases its FAC entirely on an allegation that LeaseWeb USA provided

6  dedicated hosting services to three websites that allegedly contained infringing

7  images. This "intentional act" of providing dedicated hosting services was not

8  expressly aimed at the Central District of California. Instead, the customers

9  operating those websites were based in South America.[4] Coerper Decl.¶ 9. The

10  websites are Spanish-language websites with an audience overwhelmingly from

11  South America. *See* Coerper Decl. ¶ 10; Declaration of Anna Hsia in Support of

12  LeaseWeb USA, Inc.'s Motion to Dismiss ¶¶ 2-3 & Exs. 1-2. As a passive

13  dedicated hosting provider, once LeaseWeb USA leases server space to a customer,

14  it is the customer (or the customer's end users) who decides where data and content

15  are directed. Coerper Decl. ¶ 5; *see also Nobelbiz, Inc. v. Veracity Networks, LLC*,

16  13-CV-2518 YGR, 2013 WL 5425101, at *3 (N.D. Cal. Sept. 27, 2013) (holding the

17  provision of internet services does not subject cable provider to personal jurisdiction

18  anywhere its customer's activities can reach). Indeed, LeaseWeb USA cannot even

19  access any of its customer's content without customer consent. Coerper Decl. ¶ 5.

20  Any actions by LeaseWeb USA's customers or those customers' users to avail

21  themselves of the California forum are nothing more than random and fortuitous

22  acts by third parties that do not, without more, establish specific personal

23  jurisdiction. *Nobelbiz*, 2013 WL 5425101, at *3.

24  _____

[4] There are also allegations that additional websites were hosted by foreign
25  LeaseWeb entities on servers in the United States that were not owned by
LeaseWeb USA. Even taking those allegations as true, they are not relevant to the
26  jurisdictional analysis, because "[c]orporations are treated as separate and distinct
entities and the 'presence of one … in a forum state may not be attributed to the
27  other' for determining jurisdiction." *Crystal Cruises, Inc. v. Moteurs Leroy-Somer
S.A.*, 12-55338, 2013 WL 6068586, at *1 (9th Cir. Nov. 19, 2013) (quoting
28  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 459 (9th Cir. 2007)).

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

For the same reasons, LeaseWeb USA could not have known that the alleged harm would likely be suffered in the Central District of California.  Its customers were in South America.  The content of the allegedly infringing websites was directed to a South American audience.  *C.f. Mavrix v. Brand Technologies*, 647 F.3d 1218, 1229-32 (9th Cir. 2011) (finding jurisdiction where website engaged in copyright infringement to target consumers in California).  LeaseWeb USA hosted the websites in datacenters in Virginia.  Coerper Decl. ¶ 9.  As a passive dedicated hosting provider, LeaseWeb USA did not control or even know of the content of the websites.  There is no indication here that LeaseWeb USA itself engaged in the alleged *infringing activities* for commercial gain *in California.*  Even if it did, there is no allegation that LeaseWeb USA did so knowing it was infringing P10's copyrights and that P10 was in California.  *Cf. Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (defendant expressly aimed conduct at forum where it knows a resident of the forum state and engages in conduct directed at that individual).

P10 may argue that LeaseWeb USA's use of passive, internet traffic routing equipment in California supports jurisdiction.  Not so.[5]  The equipment is passive, serves only to route traffic, and no LeaseWeb USA employees are present to operate it.  Coerper Decl. ¶¶ 6, 8.[6]  None of the websites are hosted on any equipment in California.  *Id.* at ¶ 9.  To hold otherwise would expand specific jurisdiction far beyond the bounds of due process, as dedicated hosting providers like LeaseWeb USA would be subject to jurisdiction in California for any site accessible to California residents (or in any state were a site is accessible).  It would also run afoul of well-settled law providing that merely routing traffic is not copyright

---

[5] Even if it could, P10 bears the burden of proof that specific traffic resulting in the infringement at issue in the complaint passed through this networking equipment.

[6] LeaseWeb is immune from liability based on routing internet traffic under 17 U.S.C. § 512(a), so it cannot form the basis of any allegations for copyright infringement, and P10's claims cannot "arise out of" that activity.

1   infringement, and the Ninth Circuit's server test providing that infringement occurs

2   only where the server is located, not where plaintiff resides.  *See Perfect 10, Inc. v.*

3   *Yandex N.V.*, No. C 12-01521 WHA, 2013 WL 4777189, *4 (N.D. Cal. Sept. 6,

4   2013); *see also Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2010

5   WL 9479060, *6 (C.D. Cal. July 30, 2010) (noting the "server test is now binding

6   Ninth Circuit precedent").  P10's claims arise from LeaseWeb USA's conduct in

7   Virginia, not California.

8       Similarly, P10 cannot base jurisdiction on vague allegations of conduct by

9   "hundreds of third-party websites based in California including Google.com,

10  Yahoo.com, and Blekko.com" which may display images from websites hosted on

11  LeaseWeb USA servers.  FAC ¶ 6.6.  If such vague and unsupported allegations

12  supported jurisdiction, every website would be subject to jurisdiction in California

13  when Google, Yahoo, or many large, search engines crawled its data.  This would be

14  especially incongruous because search engines like Google and Yahoo themselves

15  do not infringe copyrights when they crawl the web and develop search results.  *See,*

16  *e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).[7]  And P10

17  provides no detail on how LeaseWeb USA could be subject to jurisdiction based on

18  random, fortuitous actions taken by third party websites.

19      Finally, exercising personal jurisdiction over LeaseWeb USA would offend

20  notions of fair play and substantial justice.  The case involves allegations against a

21  Virginia-based defendant who passively provides dedicated hosting services to

22

23  [7] Likewise, merely using a payment system such as Visa or Paypal that is located
    in California is insufficient to establish jurisdiction over a party.  To hold
24  otherwise would practically subject nearly every merchant in the United States
    (and abroad) to jurisdiction where those companies are located.  FAC ¶ 6.9; *see,*
25  *e.g., Resolution Trust Corp. v. First of Am. Bank*, 796 F. Supp. 1333, 1336 (C.D.
    Cal. 1992) (membership in national clearinghouse service for payments and
26  transactions with California bank did not subject Michigan company to jurisdiction
    in California)

27

28

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

foreign third parties located overseas. In addition to the jurisdiction issues, given that witnesses and evidence would exist largely in Virginia (or South America), the Central District of California is also not a reasonable forum. It is not reasonable to hale LeaseWeb USA into a California court.

**B.** **Legal Standard For Motion to Dismiss For Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555. Nor will facts merely consistent with defendant's liability. *Iqbal*, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* In analyzing a complaint, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

1. <u>All Claims Based on Allegedly Infringing Material Hosted on Foreign Servers Should be Dismissed with Prejudice</u>

Because United States copyright laws have no extraterritorial reach, all claims against LeaseWeb USA that P10 asserts based on images hosted on foreign servers provided by other defendants must be dismissed with prejudice. Courts in the Ninth Circuit apply the "server test," which provides that the hosting website's computer is the situs of direct copyright infringement. *Amazon.com*, 508 F.3d at 1159; *Yandex*,

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

2013 WL 4777189 at *4. Courts may not enforce United States copyright laws on foreign defendants who host images on servers located outside of the United States. *See Yandex*, 2013 WL 4777189 at *4; *see also Google*, 2010 WL 9479060 at *6 ("[Perfect 10] argues unconvincingly that this Court . . . should revise the server test for direct infringement, based upon new evidence of so-called massive infringing websites. The server test is now binding Ninth Circuit precedent, and it is not within this Court's power to revise it.").

P10 alleges that foreign "servers located in Germany or the Netherlands" host "at least eleven" sites that infringe P10's copyrighted images. FAC ¶ 32. Under the server test, the situs of the infringement lies in "Germany or the Netherlands," and the United States copyright laws simply do not apply. The *Yandex* case is instructive. There, P10 sued a family of companies operating under the "Yandex" brand. *Yandex¸* 2013 WL 4777189, at *4. P10 based its direct infringement claims on 1,474 user-uploaded P10 images hosted on Yandex's servers, all of which were in Russia. *Id* at *4. Rejecting P10's claims, Judge Alsup of the Northern District of California held that images hosted on servers in Russia were "extraterritorial and not actionable under the [Copyright] Act." *Id.*

So too here. At least eleven sites identified were hosted on servers outside the United States. FAC ¶ 32. There can be no liability under the U.S. Copyright Act for images hosted on those servers. And because there can be no liability for the foreign entities hosting those images, there can be no liability for LeaseWeb USA under any theory. *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."); *see also Flava Works, Inc. v. Gunter*, No. 10 C 6517, 2012 WL 6215627, *4 (N.D. Ill. Dec. 13, 2012) (holding LeaseWeb USA was not subject to jurisdiction for claims related to videos on sites hosted on equipment belonging to LeaseWeb Netherlands.).

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

-14-

### 2. The Direct Infringement Claim Must be Dismissed Because P10 Has Not Alleged Volitional Conduct

P10 fails to state a claim for direct infringement because it has not and cannot allege volitional conduct. To state a claim for direct copyright infringement, P10 must allege that: (1) it owns the copyright for the allegedly infringed materials; and (2) that LeaseWeb USA violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *Napster,* 239 F.3d at 1013. Merely "operating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused copies to be made." *Fox Broadcasting Co., Inc. v. Dish Network LLC,* No. 12-57048, --- F.3d ---, 2014 WL 260572, at *5 (9th Cir. Jan. 24, 2014). Rather, plaintiff must allege "copying *by* the defendant." *Id.* Without allegations of volitional conduct by LeaseWeb USA, P10's direct infringement claims must be dismissed. *See Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) (direct infringement requires "some element of volition or causation" by a defendant); *Costar Group v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM (SHx), 2013 WL 2109963, at *6-9 (C.D. Cal. Mar. 8, 2013) (discussing volitional conduct requirement).[8]

P10 rests its direct infringement claim on LeaseWeb USA's mere provision of dedicated hosting services to third-party websites allegedly displaying P10's images. But dedicated hosting providers like LeaseWeb USA are passive conduits, and are not liable for direct copyright infringement.[9] Rather, liability attaches only where the defendant *causes*—i.e., committed—the infringement. *See, e.g.*, *Fox Broadcasting*, 2014 WL 260572, at *5; *LoopNet*, 373 F.3d at 550 ("an ISP who owns an electronic

---

[8] The FAC uses the word "volitional" repeatedly, but those allegations are nothing more than conclusory recitations of the elements of a copyright claim, and are insufficient under *Iqbal* and *Twombly*.

[9] To the extent P10 attempts to allege that LeaseWeb USA is liable merely because it routes traffic for infringing websites, it is entitled to a defense under the DMCA, 17 U.S.C. § 512(a) & (b).

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

facility that responds automatically to users' input is not a direct infringer"); *see also Fox Broadcasting Co., Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1102 (C.D. Cal. 2012) (applying *LoopNet*).

The Fourth Circuit's decision in *LoopNet*, applied favorably by courts in this district, is instructive. LoopNet was an ISP that operated a website allowing subscribers to post commercial real estate listings on the Internet. *Id.* at 547. LoopNet users could display real estate on LoopNet's website, loopnet.com. Plaintiff sued for direct infringement, alleging the LoopNet website contained copyrighted images. Rejecting this theory, the Fourth Circuit held that as an ISP, LoopNet was analogous to a traditional copy machine and could not be liable for direct infringement. And where a user makes illegal copies using a machine, this does not make the owner of the copy machine a direct infringer.[10] Because LoopNet undertook no volitional conduct in infringing plaintiff's images, LoopNet could not be held liable for direct copyright infringement.[11]

Even more so here. P10 alleges no volitional conduct by LeaseWeb USA. In fact, P10 alleges the opposite. P10 alleges that LeaseWeb USA provided dedicated hosting services for three third-party websites that allegedly displayed P10's images. The FAC disclaims any affirmative conduct by LeaseWeb USA to directly infringe

---

[10] The Fourth Circuit further noted the existence of:

> Thousands of owners, contractors, servers, and users involved in the Internet whose role involves the storage and transmission of data in the establishment and maintenance of an Internet facility. Yet their conduct is not truly "copying" as understood by the Act; rather they are conduits from or to would-be copiers and have no interest in the copy itself.

*Id.* at 551. P10's FAC constitutes an attempt to impose liability on any entity on the Internet chain; imposition of such liability would stymie innovation and dramatically alter the fundamental purpose of federal copyright laws.

[11] This decision is especially relevant here, because the Fourth Circuit would be the controlling law if P10 had sued LeaseWeb USA in Virginia where the sites were hosted. Indeed, P10 may try to establish jurisdiction in California instead of suing LeaseWeb in Virginia to avoid this controlling case law.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

P10's images. In *LoopNet*, the Fourth Circuit held that no direct infringement could attach for LoopNet users displaying infringing images on LoopNet's website. P10 asks this Court to ignore *LoopNet*, which is controlling law in LeaseWeb USA's home jurisdiction, and attach direct liability based on an even more tenuous relationship for allegedly infringing images posted not on LeaseWeb USA's own website, but on some third-party websites for which LeaseWeb USA passively provides dedicated hosting services. Because P10 has not and cannot allege that LeaseWeb USA engaged in conduct that *caused* the infringement, the direct infringement claim should be dismissed with prejudice.

### 3. P10's Contributory Infringement Claim Must Be Dismissed Because It Has Not Adequately Alleged Third-Party Direct Infringement, Knowledge by LeaseWeb USA, or Sufficient Contribution by LeaseWeb USA to the Infringement

To state a claim for contributory liability, P10 must allege that LeaseWeb USA "infringe[d] contributorily by intentionally inducing or encouraging direct infringement" by a third party. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Notwithstanding the Supreme Court's definition, the Ninth Circuit expanded the scope of contributory infringement, finding its existence where defendant "(1) knew of the direct infringement; and (2) … either induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *Napster*, 239 F.3d at 1019).[12] P10 fails to adequately allege any direct infringement by a relevant third party, or that LeaseWeb USA knew of such direct infringement and induced, caused, or materially contributed to it.

---

[12] Despite the Supreme Court's holding defining the scope of contributory infringement in *Grokster*, the Ninth Circuit has taken a more expansive view of what constitutes contributory infringement. In any event, P10's FAC fails to allege adequately the elements of either definition.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

*a)*      *P10 Fails to Allege Direct Infringement by a Third Party*

P10 has not adequately alleged infringement by a third party and without direct infringement by some third party, there can be no contributory infringement.  *Napster,* 239 F.3d at 1013 n.2 ("[s]econdary liability for copyright infringement does not exist absent direct infringement by a third party.").  P10 only alleges "on information and belief," that LeaseWeb USA provides dedicated hosting services to three websites that infringe P10's images.  FAC ¶ 30.  But P10 alleges no facts to support the conclusory statement that these websites are direct infringers.  P10 does not allege (1) which website directly infringed on which copyrighted images; (2) when such infringement occurred; or (3) whether the websites hosted by LeaseWeb USA were the direct infringers or whether their users were direct infringers.[13]  P10's contributory infringement claim relies on an allegation that the websites LeaseWeb USA hosted were *direct* infringers of P10's images.  Without the crucial factual allegations identified above, P10's claims do not rise to the level of plausibility, as they merely recite the elements of a contributory infringement claim.  *See, e.g.*, *Terraspan, LLC v. Rave, LLC*, No. 3:12-CV00816-K, 2012 WL 6115721, at *5-6 (N.D. Tex. Dec. 10, 2012) (dismissing copyright infringement claims based on information and belief); *see also Moses v. Youtube, Inc.*, No. 12-2822-JPM-dkv, 2014 WL 549205, at *3 (W.D. Tenn. Feb. 11, 2014) (dismissing direct infringement claims where plaintiff did not allege sufficient facts to make the claim plausible); *United States v. Ctr. For Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011) ("plaintiff relying on 'information and belief' must state the factual basis for the belief.").  And without plausible allegations of direct infringement by the websites for which LeaseWeb USA provided dedicated hosting services, the contributory infringement

---

[13] Many third-party websites, for example, are "user-generated content" sites. Allegedly infringing images on these sites are typically uploaded by the websites' users, not the website itself.

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    claim must be dismissed.

2              b)    *Plaintiff Fails to Allege Actual Knowledge of*

3                    *Infringement*

4         In the Ninth Circuit, "a computer system operator can be held contributorily

5    liable if it has *actual* knowledge that *specific* infringing material is available using its

6    system and can take simple measures to prevent further damage to copyrighted work,

7    yet continues to provide access to infringing works." *Amazon.com*, 508 F.3d at 1172

8    (emphasis in original) (citations omitted).  P10 fails to allege that LeaseWeb USA had

9    actual knowledge of direct infringement by the websites for which it provided

10   dedicated hosting services.  First, as discussed above, P10 has not adequately alleged

11   whether the websites were the actual direct infringers.  Second, P10 does not

12   adequately allege it provided LeaseWeb USA with sufficient notice to confer actual

13   knowledge.  P10 alleges it sent DMCA notices, but alleges only that the notices

14   "identified at least 12,220 infringing Perfect 10 images that the LeaseWeb Defendants

15   are making available for viewing and copying, to millions of users."  FAC ¶ 34.  For

16   DMCA notices to confer actual knowledge, however, they must describe "which of

17   these titles were infringed, who infringed them, and when the infringement occurred."

18   *Luvdarts*, 710 F.3d at 1073.  P10's failure to allege it provided specific information to

19   LeaseWeb USA requires dismissal of its contributory infringement claim.

20              c)    *Plaintiff Fails to Allege that LeaseWeb USA Induced,*

21                    *Caused or Materially Contributed to the Infringing*

22                    *Conduct*

23        Contributory liability also requires the plaintiff to allege "culpable intent" and

24   an "unlawful objective" by the defendant.  *See Grokster,* 545 U.S. at 934-40.  P10

25   does not even try to allege facts supporting an inference that LeaseWeb USA acted

26   with culpable intent or an unlawful objective.  It alleges the opposite—that LeaseWeb

27   USA neutrally provided dedicated hosting services.  That alone supports dismissal of

28

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

the contributory infringement claim.  Even if this Court applied the Ninth Circuit's more expansive definition of contributory liability, however, P10's allegations fail because it has not adequately alleged that LeaseWeb USA "induced, caused, or materially contributed to the infringing conduct."

P10 has not alleged that LeaseWeb USA induced infringing conduct.  The inducement theory requires that P10 adequately allege that (1) LeaseWeb USA distributed a device or product; (2) there were acts of infringement; (3) LeaseWeb USA's objective promoted its product for copyright infringement; and (4) causation.  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013).  P10 must also allege the acts of infringement were committed by the "recipients of the device."  *Grokster*, 545 U.S. at 940.  Here, the FAC fails to allege facts supporting elements 2-4 of the inducement theory.  P10 alleges only that LeaseWeb USA provided back-end dedicated hosting services for other websites that contain P10's images.  P10 does not adequately allege that the recipients of LeaseWeb USA's dedicated hosting services directly infringed on P10's images.  P10 instead artfully alleges that the websites contained P10's images, omitting information about whether those websites were the direct infringers (or whether users of those websites directly infringed).  Nor does P10 allege that LeaseWeb USA distributed its dedicated hosting services with an "object of promoting its use to infringe copyright."  The only plausible reading of the FAC reveals the opposite—that LeaseWeb USA only neutrally provided dedicated hosting services and never promoted its services for copyright infringement.  Finally, nowhere has P10 alleged that LeaseWeb USA promoted its services for copyright infringement and caused P10's damages.  P10 fails to allege—and cannot plausibly allege—that LeaseWeb USA is liable under an inducement theory of contributory infringement.

P10 also has not alleged that LeaseWeb USA "caused" the direct infringement.  P10 alleges only that LeaseWeb USA hosted websites that displayed P10's images.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Nowhere does P10 allege facts that support an inference that LeaseWeb USA tried to "cause" any individual or entity to post P10's images on the third-party websites. P10 does not even identify the entity that posted the images, much less allege facts supporting how LeaseWeb USA's provision of dedicated hosting services "caused" that entity to upload the infringing images. P10 fails to allege a contributory infringement claim based on causation.

Nor has P10 alleged that LeaseWeb USA "materially contributed" to the direct infringement. "To have materially contributed to copyright infringement, the . . . assistance must bear *some direct relationship to the infringing acts*." *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, No. C 04-00371 JW, 2004 WL 3217732, at *2 (N.D. Cal. Dec. 3, 2004) (citations omitted). P10 will likely argue that LeaseWeb USA materially contributed to the direct infringement by not acting after receiving P10's notices of infringement. Not so. The FAC does not allege that the notices provided sufficient facts to confer actual knowledge to LeaseWeb USA of direct infringement by LeaseWeb USA's customers, nor are the notices attached to the FAC.

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) does not save P10's contributory infringement claim. To the contrary, *Akanoc* also supports dismissal, because LeaseWeb USA has only a tertiary relationship (at best) with any alleged direct infringers, much like the defendant in *Akanoc* for the claims the Ninth Circuit dismissed. In *Akanoc*, the Ninth Circuit considered whether two dedicated hosting businesses were liable for contributory infringement. One business, MSG, leased servers, bandwidth, and IP addresses to Akanoc. Akanoc provided dedicated hosting services to "the customers who directly infringed the trademarks and copyrights." *Id.* at 940. Louis Vuitton sent notices of infringement to both MSG and Akanoc, but received no response. The Ninth Circuit affirmed the district court's finding there was no evidence of contributory infringement by MSG, because the direct infringers could not be "construed as MSG's customers." *Id.* at

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

942. Here, P10 alleges only that LeaseWeb USA hosted other websites where P10 allegedly found its images, but nowhere does P10 allege facts sufficient to show those websites were the direct infringers (as opposed to themselves being contributorily liable for user-uploaded content). Because the FAC lacks factual allegations that support an inference that LeaseWeb USA provided services to the *direct* infringers, P10 fails to adequately allege that any "material contribution" from LeaseWeb USA bore a "direct relationship" to the infringing acts. P10's contributory infringement claim based on material contribution fails as a matter of law.

## IV. CONCLUSION

Perfect 10's claims against LeaseWeb USA should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

DATED: March 28, 2014       **ZWILLGEN LAW LLP**

By: /s/ Anna Hsia
Anna Hsia SBN 234179
anna@zwillgen.com
**Attorney for Defendant**
LEASEWEB USA, INC.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

# CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2014, I electronically filed the foregoing **DEFENDANT LEASEWEB USA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Eric J. Benink, Esq.
KRAUSE KALFAYAN BENINK &
SLAVENS, LLP
550 West C. Street, Suite 530
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile   (619) 232-4019
Email: eric@kkbs-law.com

Lynell D. Davis, Esq.
Natalie Locke, Esq.
PERFECT 10, INC.
11803 Norfield Court
Los Angeles, CA 90077
Telephone:  (310) 476-8231
Facsimile:  (310) 476-0700
lynell@perfect10.com
natalie@perfect10.com


/s/ Anna Hsia
Anna Hsia (SBN 234179)
anna@zwillgen.com
ZWILLGEN LAW, LLP
915-2 Battery Street, 2d Floor
San Francisco, CA 94111
Telephone: (415) 590-2335
Facsimile:  (415) 445-0908
Attorney for Defendant
**LEASEWEB USA, INC.**

DEFENDANT LEASEWEB USA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

# EXHIBIT I

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   **CV 14-808-JFW (VBKx)**                          Date:  April 28, 2014

Title:        Perfect 10, Inc. -v- Ocom B.V. et al.

**PRESENT:**
              **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

           **Shannon Reilly**                         **None Present**
           **Courtroom Deputy**                       **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
              None                                    None

**PROCEEDINGS (IN CHAMBERS):**      **ORDER DENYING DEFENDANT LEASEWEB USA,**
                                     **INC.'S MOTION TO DISMISS FIRST AMENDED**
                                     **COMPLAINT [filed 3/28/2014; Docket No. 17]**

        On March 28, 2014, Defendant LeaseWeb USA, Inc. ("LeaseWeb USA") filed a Motion to
Dismiss First Amended Complaint.  On April 7, 2014, Plaintiff Perfect 10, Inc. ("Plaintiff" or "Perfect
10") filed its Opposition.  On April 14, 2014, LeaseWeb USA filed a Reply.  Pursuant to Rule 78 of
the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate
for submission on the papers without oral argument.  The matter was, therefore, removed from the
Court's April 28, 2014 hearing calendar and the parties were given advance notice.  After
considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as
follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

        Perfect 10 is a California corporation having its principal place of business in Los Angeles
County.  It designs, creates, produces, markets, promotes, and sells copyrighted adult
entertainment products.  It operated the well-known magazine *Perfect 10*, which it allegedly closed
because of "rampant infringement."   Perfect 10 currently operates perfect10.com, a subscription-
based website which provides access to Perfect 10's copyrighted content.

        LeaseWeb USA is a Delaware corporation, with its headquarters and principal place of
business located in Manassas, Virginia.[1]  LeaseWeb USA is an internet hosting service provider
which provides dedicated servers and internet connectivity to its customers.  A LeaseWeb USA

_____

        [1]LeaseWeb USA along with Defendants LeaseWeb Netherlands B.V. and LeaseWeb
Deutschland GmbH are subsidiaries of Defendant Ocom B.V.

customer may host its own website on a server it leases from LeaseWeb USA, or it may act as a reseller of hosting services and "sub lease" that server space to others. LeaseWeb USA's only server facility or data center which hosts customer's websites is located in Manassas, Virginia. Although it does not own a server facility in California, it owns some networking equipment in the San Francisco area.

The leaseweb.com website, which is jointly used by Defendants Ocom B.V., LeaseWeb Netherlands B.V., LeaseWeb Deutschland GmbH, and LeaseWeb USA, states that LeaseWeb is "one of the largest hosting providers in the world" and advertises that its network is connected with "internet exchanges" in Los Angeles and Palo Alto, among other locations. The parties have not presented any evidence that demonstrates how many of LeaseWeb USA's customers are California residents.

LeaseWeb USA does not have a mailing address or office in California. It has never had any employees or bank accounts in California and has never paid taxes in California. At the time Perfect 10 filed this action, LeaseWeb USA was not registered to do business in California and did not have an agent for service of process in California. However, on March 12, 2014, after this action was filed, LeaseWeb USA designated an agent for service of process in California.

In its First Amended Complaint filed on March 4, 2014, Perfect 10 alleges that LeaseWeb USA and Defendants Ocom B.V., LeaseWeb Netherlands B.V., and LeaseWeb Deutschland GmbH (collectively "LeaseWeb") provided dedicated hosting services to websites that infringe Perfect 10's copyrighted works. More specifically, Perfect 10 alleges that LeaseWeb USA provides hosting services to the following infringing websites: poringa.net, ultraforos.com, ultraforos.net, and imgbox.com.[2]   At least one of those websites, imgbox.com, is operated in California.

Between February 2013 and the present, Perfect 10 has sent at least 22 DMCA notices to abuse@leaseweb.com, which identified approximately 12,220 images that it claims infringed Perfect 10's copyrights. According to Perfect 10, LeaseWeb USA and its affiliates have refused to "process" those DMCA notices and failed to take any action to remove the infringing images. Those DMCA notices were signed by Dr. Norm Zada, the President of Perfect 10, and identified a

---

[2]LeaseWeb USA argues that the Court should disregard Perfect 10's evidence related to California website imgbox.com because it is not specifically referred to in the First Amended Complaint. *See* Reply at p. 2 ("P10's arguments regarding 'imgbox.com' . . . are irrelevant, as that website does not even appear in the FAC and has no bearing on a specific jurisdiction analysis."). However, Plaintiff made it clear in its First Amended Complaint that it was not limiting its claims solely to the websites listed in its First Amended Complaint. *See* First Amended Complaint at ¶ 30 (stating "LeaseWeb Defendants currently host *at least* eight websites on their servers located in Manassus, Virginia that infringe Perfect 10's Copyrighted Works" and in describing those websites alleges that "[t]hese websites include, *without limitation* . . . .") (emphasis added). Moreover, according to the Declaration of Dr. Norman Zada in support of Perfect 10's Opposition, at least one of the 22 DMCA notices referred to in the First Amended Complaint identified the website imgbox.com as infringing Perfect 10's copyrights. Accordingly, the Court will consider Perfect 10's evidence related to imgbox.com.

Initials of Deputy Clerk  _sr_

California mailing address in Beverly Hills, CA.

In its First Amended Complaint, Plaintiff alleges one claim for relief for copyright infringement against Defendants LeaseWeb USA, Ocom B.V., LeaseWeb Netherlands B.V., and LeaseWeb Deutschland GmbH. Perfect 10 has only served LeaseWeb USA and has not yet served its foreign affiliates. LeaseWeb USA moves to dismiss the First Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.    Procedural Considerations

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court may decide a question of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties, or may hold an evidentiary hearing on the matter. *See* 5A Wright & Miller, Federal Practice and Procedure, § 1351, at pp. 253-59 and n. 31-35 (2d ed. 1990); *Rose v. Granite City Police Dept.*, 813 F. Supp. 319, 321 (E.D. Pa. 1993). Whichever procedure is used, plaintiff bears the burden of establishing that jurisdiction is proper. *See, e.g., Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

When the Court does not hold an evidentiary hearing and instead relies on written materials, the plaintiff need only make a prima facie showing of personal jurisdiction to survive a motion to dismiss. *Id.* at 1223. All allegations in the plaintiff's complaint must be taken as true, to the extent not controverted by the defendant's evidence, and all conflicts in the evidence must be resolved in the plaintiff's favor. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

### B.    Substantive Standard

Because there is no applicable federal statute governing personal jurisdiction in this case, the Court applies the law of California. *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute extends jurisdiction to the limits of constitutional due process. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996); Cal. Code. Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"). Therefore, the Court must determine whether the requirements of due process are satisfied by the Court's exercise of personal jurisdiction over LeaseWeb USA.

The Fourteenth Amendment's Due Process Clause only permits courts to exercise personal jurisdiction over a defendant who has sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two recognized bases for personal jurisdiction over nonresident defendants: (1) "general jurisdiction," which arises where the defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him or it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum have given rise to

the claim in question.  *See Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050-51 (9th Cir. 1997).

In this case, Perfect 10 concedes that the Court does not have general jurisdiction over LeaseWeb USA, and instead contends that LeaseWeb USA's contacts with California are sufficient to establish specific jurisdiction.  Accordingly, the Court focuses on specific jurisdiction.  The Ninth Circuit has developed a three-part test for assessing the exercise of specific personal jurisdiction over a party:

(1)  the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (2004); *see also Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).  "The plaintiff bears the burden of satisfying the first two prongs of the test. . . . If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

## C.  Personal Jurisdiction Analysis

### 1.  LeaseWeb USA  purposefully directed its activities toward California.

In order to meet the first prong of the specific jurisdiction test, Perfect 10 must establish that LeaseWeb USA either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California.  *Schwarzenegger,* 374 F.3d at 802.  This first prong "ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citations omitted).  The first prong refers to both "purposeful direction" and "purposeful availment," which are "distinct concepts*." Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).; *Schwarzenegger*, 374 F.3d at 802.  In cases involving tortious conduct, courts generally apply a purposeful direction analysis.  *Mavrix Photo, Inc.*, 647 F.3d at 1228.  Because Perfect 10 "has alleged copyright infringement, a tort-like cause of action, purposeful direction is the proper analytical framework."  *Id.* (quotations and citations omitted).

In order to determine whether a non-resident defendant purposefully directed its activities toward California, the Ninth Circuit applies its "effects" test, which it crafted based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  To satisfy this test, the defendant must

have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quotations and citations omitted).    Although the Ninth Circuit commonly refers to this test as the *Calder* "effects" test, the Ninth Circuit has "warned courts not to focus too narrowly on the test's third prong -- the effects prong -- holding that 'something more' is needed in addition to a mere foreseeable effect." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (citation omitted).  The Ninth Circuit has concluded that "'something more' is what the Supreme Court described as 'express aiming' at the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

The Court concludes that Perfect 10 has made a prima facie showing that LeaseWeb USA purposefully directed its activities toward California, i.e. committed an intentional act, expressly aimed at California, causing harm that the LeaseWeb USA knew was likely to be suffered in California.   LeaseWeb USA provided its hosting services to at least one website operated in California, and continued to provide those hosting services to that California customer, even after it acquired actual knowledge that its California customer was allegedly infringing a California company's copyrights.[3]  These contacts alone are sufficient to establish purposeful direction and express aiming at the forum state.    *See Mavrix*, 647 F.3d at 1229 ("[W]e find most salient the fact that Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain."); *Washington Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 675 (9th Cir. 2012) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("We have repeatedly stated that the 'express aiming' requirement is satisfied, and specific jurisdiction exists, 'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'"); *id.* at 678 (finding that defendant's intentional acts were expressly aimed at the copyright held by the plaintiff because the plaintiff knew that its intentional acts would impact plaintiff's copyright by virtue of the cease-and-desist letter it had received).

Although these contacts are more than sufficient to establish that LeaseWeb USA purposefully directed and expressly aimed its activities toward California, they are not LeaseWeb

---

[3]The Court notes that the Ninth Circuit does not require that the intentional act itself be tortious or wrongful.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207-1208 (9th Cir. 2006)("In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant.  Many cases in which the *Calder* effects test is used will indeed involve wrongful conduct by the defendant.  But we do not read *Calder* necessarily to require in purposeful direction cases that all (or even any) jurisdictionally relevant effects have been caused by wrongful acts. We do not see how we could do so, for if an allegedly wrongful act were the basis for jurisdiction, a holding on the merits that an act was not wrongful would deprive the court of jurisdiction."). Accordingly, it is unnecessary to determine whether the conduct in this case was tortious or wrongful.  However, the act of providing hosting services to a customer, and continuing to do so after discovering that the customer is allegedly infringing a plaintiff's copyrights, may constitute a wrongful or tortious act that would be sufficient to support a claim for contributory copyright infringement.  *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011).

Initials of Deputy Clerk  _sr_

USA's only contacts with California. LeaseWeb USA has attempted to solicit California customers by publicly promoting and marketing its network infrastructure and connectivity in California via its website, and, at a minimum, has entered the California marketplace. *See Mavrix*, 647 F.3d at 1231 ("[W]here, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have expressly 'aimed' at that state."). In light of these contacts, there can be no serious claim or concern that LeaseWeb USA is being haled into a distant forum based upon "random, fortuitous or attenuated" contacts.

Moreover, in considering the third element of the *Calder* effects test, the Court concludes that LeaseWeb USA certainly knew or should have known that its intentional acts would likely cause harm in California. Indeed, "[t]he economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable." *Mavrix Photo, Inc.*, 537 F.3d at 1231. "In determining the situs of a corporation's injury, '[o]ur precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business.'" *Id.* (quoting *Dole Food Co, Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002). LeaseWeb USA knew or should have known that Perfect 10 would suffer economic harm in California, when it refused to process DMCA notices reflecting a California mailing address.

Accordingly, the Court concludes that Perfect 10 has established that LeaseWeb USA purposefully directed its activities toward California.

### 2. Arising out of or relating to LeaseWeb USA's forum related activities

Based on the evidence, the Court also concludes that Perfect 10's has made a prima facie showing of the second prong of the specific jurisdiction test, i.e. its claim for copyright infringement arises out of or relates to LeaseWeb USA's forum-related activities. The Ninth Circuit has adopted a "but for" test in assessing whether a plaintiff's claim arises out of or relates to a defendant's forum related activities. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). In other words, a court "must determine if the [plaintiff] would not have been injured 'but for' the [defendant's] conduct directed toward [plaintiff] in California." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The Court easily concludes, that "but for" Lease WebUSA's provision of hosting services to infringers of Perfect 10's copyrights, at least one of which is based in California, and "but for" its alleged refusal to process Perfect 10's DMCA notices, Perfect 10 would not have been injured.

### 3. Fair Play and Substantial Justice

Because Perfect 10 has satisfied the first two prongs of the specific jurisdiction test, the burden then shifts to LeaseWeb USA to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). This third "reasonableness" prong is satisfied when the following factors weigh in favor of the exercise of jurisdiction over a nonresident defendant:

(1)    The extent of purposeful interjection into the forum state;
(2)    The burden on the defendant of defending in the forum;

(3)    The extent of conflict with the sovereignty of defendant's state;
(4)    The forum state's interest in adjudicating the dispute;
(5)    The most efficient judicial resolution of the controversy;
(6)    The importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7)    The existence of an alternative forum.

*Fed. Deposit Ins. Corp. v. British-American Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986)). Although it was LeaseWeb USA's burden to present a compelling case that the exercise of jurisdiction would not be reasonable, LeaseWeb USA apparently recognized that it could not meet its burden because it only devoted a total of four sentences in its papers to this prong of the specific jurisdiction test, and two of those sentences were merely conclusions. Indeed, LeaseWeb USA did not address or even refer to the relevant factors or cite any case law, which is tantamount to a concession that the exercise of jurisdiction over it would be reasonable. Accordingly, based on the evidence of LeaseWeb USA's contacts in California, the Court concludes that the exercise of jurisdiction over LeaseWeb USA in California is reasonable.

LeaseWeb USA's motion to dismiss for lack of personal jurisdiction is **DENIED.**

## III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

The Court finds that the issues raised by LeaseWeb USA are more appropriately resolved in a motion for summary judgment. Accordingly, LeaseWeb USA's motion to dismiss for failure to state a claim is **DENIED.**

## IV.    CONCLUSION

For the foreging reasons, LeaseWeb USA's Motion to Dismiss First Amended Complaint is **DENIED.**  LeaseWeb USA shall file an Answer to Perfect 10's First Amended Complaint on or before **May 5, 2014**.


IT IS SO ORDERED.

Initials of Deputy Clerk __sr__

# EXHIBIT J

## How accurate are IP geolocation services?

By Ioana Livadariu (https://blog.apnic.net/author/ioana-livadariu/) on 15 Sep 2020

Category: Tech matters (https://blog.apnic.net/category/tech-matters/)

Tags: Guest Post (https://blog.apnic.net/tag/guest-post/), geolocation (https://blog.apnic.net/tag/geolocation/), measurement (https://blog.apnic.net/tag/measurement/)

Like 19       Share

Tweet



The proliferation of online services comprising globally-spread micro services has security and performance implications.

For this reason, understanding the underlying physical paths connecting end points has become important and given rise to numerous approaches for inferring the location of infrastructure IP addresses.

Our recent study (https://dl.acm.org/doi/abs/10.1145/3404868.3406664) at SimulaMet sought to investigate the accuracy and difference between these approaches.

We found there are inaccuracies in the existing geolocation approaches when mapping end-to-end Internet paths to physical locations, with 77% of IPv4 and 65% of IPv6 economy-level mappings missing at least one economy along the path of our dataset.

We also found that popular geolocation services rely heavily on data published by the Regional Internet Registries (RIRs), as geolocation mappings from these services match the geolocation from the RIR delegation files. However, geolocation databases tend to erroneously geolocate IPs that belong to Autonomous Systems (ASes) with global presence and IPs that change ownership due to merger and acquisition. Further, lack of coverage of the geo-datasets and IP-to-economy inaccuracies can add or miss economies from the economy-level end-to-end path.

## Our findings highlight the sources of IP-geolocation disagreements

We evaluated the economy-level accuracy of two dedicated IP geolocation datasets (MaxMind (https://dev.maxmind.com/geoip/geoip2/geolite2/) and IP2Location (https://lite.ip2location.com)) and two RTT-based geolocation methods (HLOC (https://ieeexplore.ieee.org/document/8002903) and RIPE's IPmap (https://ipmap.ripe.net/)), using end-to-end IPv4 and IPv6 paths between 30 vantage points located in seven economies (Canada, China, Germany, Netherlands, Norway, Sweden, and the USA).

MaxMind and IP2Location cover at least 80% of the IP addresses that are part of the collected paths. However, IPmap and HLOC have limited coverage, which can be explained by the dependency on the number of vantage points for the RTT measurements. The use of HLOC is also limited by the ability to extract correct geo-hints from pointer records (PTRs) of the measured IPs.

Most of the IPs geolocated by MaxMind and IP2Location are most likely mapped to the same economy. Moreover, for a significant percentage of these IPs, this economy-level geomapping coincides with the economy where the IP space is registered (which we

extracted from the RIR allocation and assignment files).

For a small percentage of IPs, the geomappings either co   t   y or pa   ia l  disagreed. Using these disagreements we identified three possible causes of erroneous IP geolocation:

1. MaxMind and IP2Location appear to use information from the whois records (economy, network name) to build their IP-to-economy mappings.
2. IPs owned by organizations with international presence are often geolocated incorrectly.
3. Merger and acquisition of organizations is a key source of IP geolocation inaccuracies.

# Do IP geolocation disagreements affect the end-to-end IP path geomappings?

IP geolocation disagreements can falsely indicate path tromboning or path detours, as well as miss economies along the IP paths. This, in turn, has security implications as it indicates that, depending on popular geolocation databases, end-hosts might be unaware of the economies their Internet traffic is traversing — something we found among our collected paths, with a high percentage of both IPv4 and IPv6 paths appearing to be detoured from Europe through the United State.

Further, we found about 77% of IPv4 and 65% of IPv6 economy-level mappings miss at least one economy along the path and that both IP paths within the same continent (short-haul paths) as well as between different continents appear to miss economies (long-haul paths).

# Is there room for improvement?

We propose a novel active measurement-based approach, which hinges on a simple idea: a location of a route can be greatly narrowed down if it is probed from within its AS.

Using existing methods (whois service, DNS names and geolocation approaches), we found the IP space owner and the possible location of the IP address, which we further used to choose a vantage point (VP) from which to traceroute to the target IP. A VP is judged suitable if it lies within the IP holder's AS and in close proximity to the initially guessed location.

Our current approach relies on publicly accessible looking glasses (LG) as VPs. We consider the IP in the same economy as the LG if the traceroute confirms a topological proximity (for example, within a few router level hops and a latency of sub-20ms). We proceed to select another LG, if the previous one proved far away from the IP under test. Figure 1 illustrates this approach.

(https://blog.apnic.net/wp-content/uploads/2020/08/          _F    .png)

📷 Figure 1 — Overview of the LG-based IP geolocation approach.

Figure 2 compares economy-level paths inferred by MaxMind and IP2Location (top part) to the path inferred by the LG-based approach (bottom part).

(https://blog.apnic.net/wp-content/uploads/2020/09/geolocation_Figure2.png)

📷 Figure 2 — Example of IP-geolocation of path from China (CN) to Norway (NO).

In the top part, the figure also shows the economies where the IP space is registered (Delegation line). The path goes from China to Norway and traverses three organizations: China Unicom, Cogent and Broadnet. Both approaches appear to miss economy geomapping data along the path in the transit network.

We plan to further develop our method for narrowing down the location of IPs that is based on probing these IPs from within the ASes that advertise them, and welcome your input on this approach in the comment section below.

Contributors: Ahmed Elmokashfi

*Ioana Livadariu is a Postdoctoral Fellow at SimulaMet in Oslo, Norway.*

Rate this article
- •
- •
- •
- •
- •

(https://rating-widget.com/my-rating-report/star/oxygen/rating-166452880-5/)
Rate this (4 Votes)

🐦 **Discuss on Twitter** (https://twitter.com/search?q=https%3A%2F%2Fblog.apnic.net%2F2020%2F09%2F15%2Fhow-accurate-are-ip-geo

*The views expressed by the authors of this blog are their own and do not necessarily reflect the views of APNIC. Please note a Code of Conduct (/?p=395) applies to this blog.*

## Leave a Reply

Your email address will not be published. Required fields are marked *

**Comment**

**Name** *

**Email** *

**Website**

☐
**Save my name, email, and website in this browser for the next time I comment.**

☐ **Yes, add me to your mailing list**

I'm not a robot
reCAPTCHA
Privacy - Terms

Post Comment

## Get Updates

Email *

Subscribe!                                                                 Show options

Select list(s):
☐ Daily
☑ Weekly

## Authors

▶ Geoff Huston (https://blog.apnic.net/author/geoff-huston/)

▶ Paul Wilson (https://blog.apnic.net/author/paul-wilson/)

▶ More

## Tags                                                                    ▼

## Related Articles

**Geofeeds and shepherding: Where is that network?**
(https://blog.apnic.net/2021/02/26/geofeeds-and-shepherding-where-is-that-network/) by George Michaelson (https://blog.apnic.net/author/ggm/) February 26, 2021

Opinion: Plans to register the locations of networks using geofeeds could improve accuracy.



**Looking at your network from the outside in**
(https://blog.apnic.net/2020/03/13/looking-at-your-network-from-the-outside-in/)    by Taiji Kimura (https://blog.apnic.net/author/taiji-kimura/) March 13, 2020

Guest Post: APNIC's NetOX provides several handy tools to help you monitor the health of your network from the outside.



**Identifying unexpected Internet services**
(https://blog.apnic.net/2021/12/21/identifying-unexpected-internet-services/)    by Liz Izhikevich (https://blog.apnic.net/author/liz-izhikevich/) December 21, 2021

Guest Post: Study finds that TCP SYN-ACK is not an accurate indicator of service presence because of middlebox responses.



**PowerShellRunBox: Analysing PowerShell threats using...**
(https://blog.apnic.net/2019/10/23/powershellrunbox-analyzing-powershell-threats-using-powershell-debugging/) by Matt Oh (https://blog.apnic.net/author/matt-oh/) October 23, 2019

Guest Post: Matt Oh shows how PowerShellRunBox can help analyse complicated malicious PowerShell scripts.

(https://www.apnic.net/)

Connect with us

© 2022 APNIC    ABN 42 081 528 010

Privacy (https://www.apnic.net/apnic-info/privacy)    Contact (https://www.apnic.net/about-APNIC/organization/contact-APNIC)
Help Centre (https://help.apnic.net/s/)    NRO News (https://www.nro.net/category/news)
Service Status (https://www.apnic.net/about-APNIC/service-updates)    Careers (https://www.apnic.net/about-apnic/employment/)

# EXHIBIT K

**neustar**

Site search...

**Resources & Tools**

# Neustar IP Intelligence FAQ

## About IP Intelligence

Neustar's IP Intelligence is a family of decisioning data, which consists of IP GeoPoint and IP Reputation. IP Intelligence, the authoritative source of IP decisioning data with coverage of 99.99%* of routable addresses worldwide, is powered by a proprietary global data collection network using patented advanced algorithms and curated by a team of Network Geography Analysts (NGAs). If a decision is made to deliver digital media to a user, block access to a site or content, or tag an IP address with a history of fraud or risk, customers can be sure that decision will be made using the most comprehensive IP geolocation, ownership, routing and reputation data available in the market.

**Need to geo-locate a specific IP?**

Look Up

---

## About IP Geolocation

## What is Internet Protocol (IP)?

The Internet Protocol is the method by which data is sent from one computer to another on the Internet. Each computer (known as a host) that is connected to the Internet has at least one IP address that uniquely identifies it from all other computers. The most widely used version of IP today is Internet Protocol Version 4 (IPv4) however, due to

the limit on the number of IPv4 addresses that can be allocated,
Internet Protocol Version 6 is rapidly being adopted in the industry.

## What is IP geolocation?

IP geolocation is the science of determining the physical location and
Internet connection characteristics of a Web visitor, and then

leveraging this data to deliver the optimal user experience and
determine business strategy. IP geolocation is the technology upon
which our Internet Location Intelligence platform is based.

## Do I get a unique IP address assigned to my computer?

IP addresses work more like the party lines used in the early phone
systems. Most end-user IP addresses are dynamically assigned (from a
pool of available IP addresses), rather than pre-assigned. When you
connect to the Internet, your ISP assigns your computer an IP address
that will likely be used during the life of that connection. These are
dynamically assigned (or DHCP) IP addresses. When your device (Wi-fi
laptop, cable/DSL, modem, etc.) disconnects from the Internet, some
other device may be assigned that address for temporary use. Servers
(e.g., Web site hosts) and other devices that are permanently
connected to the Internet are often assigned, "static" IP addresses,
when they need to have a "permanent address" where users or other
servers can find them.

## Why is it so hard to locate where an IP address is?

There is no direct relationship between the IP address system and your
location. Unlike a land-based phone number (land line), where the
area code often indicates the caller's geographic area, an IP address is
usually associated with the organization, like an Internet service
provider, to which it has been allocated. And, because IP addresses
are often reused, any location information previously determined
becomes out of date when a new device gets that address.

## How can you identify a Web visitor's location without invading their privacy?

Neustar only stores IP geolocation data at the zip code level or higher,

e.g. city, state, country. Personal privacy is protected because we do not have information about a person, nor an email address or a street address.

---

# Using IP Geolocation

## How is IP geolocation used?

IP geolocation has demonstrated business value in five primary areas - content delivery, fraud prevention, marketing, compliance, and security. Providers of digital content use IP geolocation to determine a viewer's geographic eligibility to access their content and to enforce black out areas. Fraud prevention teams focused on e-commerce and financial services sites can compare a web visitors' registration and shipping addresses with the geolocation of the IP to detect suspicious transactions. Online marketers can execute geographically based ad campaigns just as they do in the offline world. Internet businesses that are subject to geography-based regulations - like online casinos - use the technology to make sure they operate legally. And governments and law enforcement agencies can trace Internet criminals.

## How does IP geolocation data approximate the location of a visitor?

Neustar IP geolocation data has coverage of 99.99% of the allocated Internet addresses, including information about which company has been assigned the block of IP addresses that an individual IP address of interest belongs to. That information, when combined with network data, other Neustar data, and third-party data, allows us to make an informed "guess" as to city, zip code, state, and country where the current device associated with that IP address is located.

However, when a device does not connect to the Internet directly, but instead connects via an intermediary device like a cell phone mobile gate, a VPN, or a proxy/anonymizer server, geolocation services are usually only able to establish the approximate location of the intermediary device. Connection information is typically provided to allow the user of the geolocation data to make decisions based on this lower accuracy location information.

**Related Resources**

Webinar

**IPv6 Adoption: 5G is Finally Ushering in the New Era | Neustar**

Solution Sheet

**UltraThreat Feeds: Comprehensive, Near Real-Time Insights | Neustar**

Whitepaper

**Crackdown on Password Sharing | Neustar**

Webinar

**Webinar: The Human Element of IP Geolocation | Neustar**

**Marketing Solutions**

Fabrick™

Customer Analytics

Customer Experience

Customer Intelligence

AdAdvisor

**Risk Solutions**

TRUSTID Fraud Solutions

TRUSTID Compliance Solutions

TRUSTID Contact Center Solutions

**Communications Solutions**

Trusted Call Solutions

Business Listings

Carrier Provisioning

Global Numbering Insights

**Security Solutions**

Application & Network Security

DNS Services

Security Intelligence

Web Performance Management

Professional Services

Industries

Clients

Resources

Blog

**About Us**

Leadership

Careers

News & Events

Partners

**Contact Us**

Neustar Headquarters
1906 Reston Metro
Plaza
Suite 500
Reston, VA 20190

571-434-5400

Product and Sales
Inquiries:

**1-855-898-0036**

Customer Support:

**1-844-NSR-CUST**

Privacy Support:

**1-844-638-2878**

  



Copyright © 2022 TransUnion LLC. All Rights Reserved     Privacy *(Updated 12/1/21)*     Your Ad Choices

Privacy Choices     Do Not Sell My Personal Information     Legal     Sitemap     Payments

# EXHIBIT L

Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
Katherine Burgess (SBN 330480)
katherine.burgess@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3600
San Francisco, CA 94111
Tel: (415) 291-6200
Fax: (415) 291-6300

Peter Kang (SBN 158101)
peter.kang@bakerbotts.com
BAKER BOTTS L.L.P
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Tel: (650) 739-7500
Fax: (650) 739-7699

Bailey Morgan Watkins (*pro hac vice*)
bailey.watkins@bakerbotts.com
BAKER BOTTS L.L.P
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
Tel: (512) 322-2500
Fax: (512) 322-2501

Attorneys for Defendants
Booking.com B.V.,
Priceline.com LLC,
Agoda Company PTE. LTD.,
and OpenTable, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EXPRESS MOBILE, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>BOOKING.COM B.V., PRICELINE.COM LLC, AGODA COMPANY PTE. LTD., and OPENTABLE, INC.,<br><br>    Defendants. | Case No. 3:20-cv-08491-RS<br><br>**BOOKING.COM B.V., PRICELINE.COM LLC, AGODA COMPANY PTE. LTD., AND OPENTABLE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-55)** |

In accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California, Defendants Booking.com B.V. ("Booking.com"), Priceline.com LLC ("priceline.com"), Agoda Company PTE. LTD. ("Agoda"), and OpenTable, Inc. ("OpenTable") (collectively "Defendants"), by and through undersigned counsel, and without waiving any further objection or assertions of privilege to any specific documents when or if such documents are identified, hereby serves these objections and responses to Plaintiff Express Mobile, Inc.'s ("Express Mobile" or "Plaintiff") First Set of Requests for Production of Documents (Nos. 1-55) (the "Requests") received by Defendants on March 29, 2021, pursuant to Rule 34(b)(2) of the Federal Rules of Civil Procedure. The objections and responses are based upon information presently available to, and identified by, Defendants after reasonable inquiry. As discovery proceeds, facts, information, evidence, documents, and things may be discovered that are not set forth in this response and that may be responsive to these Requests for Production. Defendants reserve the right to amend or supplement these answers to the fullest extent allowable under the Federal Rules of Civil Procedure.

Specific objections to each of these Requests are made on an individual basis in the responses below. In addition to these specific objections, Defendants make certain objections applicable to each Request and/or to the Requests for Production as a whole ("General Objections"). These Objections are hereby incorporated by reference into the responses made with respect to each separate Request.

The specific responses and objections set forth below are based upon Defendants' interpretation of the language used in the requests, and Defendants reserve the right to amend or supplement its responses and objections in the event that Express Mobile asserts an interpretation that differs from Defendants' interpretation. Defendants reserve all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility as evidence in any subsequent

proceeding in or trial of this or any other action for any purpose of Defendants' responses herein and any document or thing identified or provided in response to the requests.

Subject to the foregoing, Defendants respond and object as follows:

## **GENERAL OBJECTIONS**

Defendants make the following general objections to each Request in Plaintiff's First Set of Requests for Production of Documents (Nos. 1-55) (the "Requests"), and expressly incorporates each of them into the specific responses set forth below:

1.      Defendants object to the Requests to the extent they fail to describe with reasonable particularity the scope of the documents requested, or to the extent it is vague, ambiguous, or susceptible to more than one interpretation.

2.      Defendants object to the Requests as seeking documents not reasonably calculated to lead to the discovery of admissible information. Defendants object to the Requests to the extent that they seek discovery of information or documents that is not relevant to any claim or defense raised in this action, beyond the scope of the operative complaint, and/or not proportional to the needs of the case.

3.      Defendants object to the Requests to the extent they are not narrowly tailored.

4.      Defendants object to the Requests to the extent they call for documents that are not already in the possession, custody, or control of Defendants.

5.      Defendants object to the Requests to the extent they seek documents not created or maintained in the ordinary course of business.

6.      Defendants object to the Requests to the extent they seek disclosure of information protected under the attorney-client privilege, the work-doctrine privilege, or any other applicable privilege or immunity. Nothing contained in these Objections is intended or should be construed as

a waiver of the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or protection.

7.     Defendants object to the Requests to the extent they seek documents and information not limited in time as not proportional to the needs of the case.

8.     Defendants object to the Requests to the extent they seek confidential and/or proprietary business information of third parties. Defendants will not disclose third-party confidential information without the necessary consents from any such third-party.  Defendants will also not search for or produce information not in its possession, custody, or control or that is more readily accessible through other sources.

9.     Defendants object to the Requests to the extent they are vague, overly broad and impose an undue burden and are not proportional to the needs of the case, including to the extent they seek information (a) that is publicly available, (b) that is obtainable from another source that is more convenient, less burdensome, or less expensive; or (c) that is in the possession, custody, or control of Express Mobile.

10.     Defendants object to each request to the extent it calls for the production of documents that are in the public domain and, therefore, is no greater burden for Express Mobile than Defendants to obtain.

11.     Defendants object to the requests as premature, including because Defendants have not yet responded to the First Amended Complaint, rendering many requests not tied to issues in the case at this time. The requests are also premature as many related to Accused Products which have not yet been identified by Express Mobile as required under the Patent Local Rules. The requests are also premature as many relate to issues for which Express Mobile bears the burden, but Express Mobile has not yet made efforts to meet its burden.  To the extent that Defendants agree to

search for and produce documents, it does not indicate that Defendants thinks that the requests are proper at this time.

12.     Defendants object to each Request that seeks "all" documents or things as disproportionate to the needs to of the case.  To the extent that Defendants agree to search for and produce documents, they agree to instead conduct reasonable searches for information sufficient to show the requested subject matter.

13.     Defendants object to each Request to the extent it calls for production of Electronically Stored Information (ESI) prior to the entry of a stipulated order for the discovery of electronically stored information on which the parties will meet and confer as set forth in the Northern District's Guidelines for the Discovery of Electronically Stored Information and the Model Stipulation and Order Re: Discovery of Electronically Stored Information for Patent Litigation. Defendants further object to each Request to the extent it calls for the search of and production of e-mail and e-mail attachments, which is particularly burdensome and where the burden of searching and reviewing is not proportionate to the needs of the case. Defendants will not produce e-mail or e-mail attachments in response to these requests. Counsel for Defendants will meet and confer regarding entry of a stipulated order regarding the production of ESI, including the number of proposed e-mail custodians and search terms.

14.     Defendants object to the Requests as premature to the extent they seek information relating to U.S. Pat. Nos. 6,546,397 ("the '397 Patent") and 7,594,168 ("the '168 Patent"), because the instant case is stayed pending ongoing reexamination as to the '397 and '168 Patents. To the extent that Defendants agree to search for and produce documents, they agree to conduct reasonable searches related to U.S. Pat. Nos. 9,063,755 ("the '755 patent"), 9,471,287 ("the '287 patent"), and 9,928,044 ("the '044 Patent").

15. Defendants object to Plaintiff's definition of "Booking-BV," "Priceline," "Agoda," "OpenTable," "Defendants," "You," and "Your" to the extent the definitions purports to impute knowledge of unspecified or unknown parties or persons to any Defendant and to the extent it purports to include any other person or entity that is separate and distinct from any Defendant and not under any Defendant's control. Defendants further object to this definition to the extent it purports to include Defendants' attorneys and, therefore improperly seeks information protected by the attorney-client privilege, the work product doctrine, the common interest privilege and/or any other applicable privileges or immunities. In responding to these requests, Defendants are limiting their responses to information reasonably known to employees of the named Defendants.

16. Defendants object to the definition of "Accused Product" and "Accused Functionalities" as vague, ambiguous, and unduly burdensome, at least because the definition fails to provide the requisite specificity about what is actually being accused and seeks information unlimited in time and outside of the scope of United States patent law. Defendants further object to the definition of "Accused Products" as improperly exceeding the scope of the products identified as infringing in Plaintiff's First Amended Complaint and is therefore not proportional to the needs of the case, including with respect to the phrase "any system, platform, or website, designed, developed, made, used, offered for sale, promoted, marketed or sold by Defendants for use in the creation, development, or configuration of content, such as internet or mobile content, that can be displayed on a device." Defendants will respond to the Requests with respect to the products specifically identified as allegedly infringing in Plaintiff's Amended Complaint.

17. Defendants object to the Plaintiffs' Instructions and Definitions and to the requests to the extent they purport to impose any discovery obligation greater than or different from those under the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, or beyond any discovery limitations imposed by the Court.

1

2

**SPECIFIC OBJECTIONS**

3

**Request for Production No. 1**

4

All Documents relating to the structure, function, operation, or characteristics of each

5

Accused Product, including, without limitation, software, source code and source code revision

6

histories, product manuals, data sheets, product specifications, technical manuals, training

7

manuals, support information, documents related to product upgrades, beta testing documents,

8

documents related to bug fixes, product road maps, drawings, schematics, block diagrams,

9

sketches, notebooks, memoranda, notes, correspondence, status reports, modification reports,

10

development reports, flow charts, patent disclosures, test results, test reports and engineering

11

reports.

12

**Response to Request for Production No. 1**

13

In addition to its general objections, Defendants object to this Request as unduly

14

burdensome, overbroad, and vague and ambiguous, including with respect to the phrases

15

"Accused Product" and "structure, function, operation, or characteristics." Defendants object to

16

this Request for Production as overbroad, unduly burdensome, and not proportional to the needs

17

of the case to the extent it seeks "All" documents "relating to" certain topics. Defendants object to

18

this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to

19

the extent it seeks information regarding products beyond those identified in Plaintiff's First

20

Amended Complaint. Defendants object to this Request for Production as premature to the extent

21

Defendants have not filed an Answer and Express Mobile has not served Infringement

22

Contentions. Defendants also object to this Request because the Request does not reasonably limit

23

the scope of the request to information related to claims or defenses in the case. Defendants object

24

to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

25

the extent it is not timebound by any relevant time period. Defendants object to this Request to

26

27

28

the extent it seeks disclosure of highly confidential source code without a stipulated protective order. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 2**

All Documents relating to the design, engineering, testing or development of each Accused Product including, without limitation, software, source code and source code revision histories, product manuals, data sheets, product specifications, technical manuals, training manuals, support information, documents related to product upgrades, beta testing documents, documents related to bug fixes, product road maps, drawings, schematics, block diagrams, sketches, notebooks, memoranda, notes, correspondence, status reports, modification reports, development reports, flow charts, patent disclosures, test results, test reports and engineering reports.

**Response to Request for Production No. 2**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Product" and "design, engineering, testing, or development." Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent

Defendants have not filed an Answer and Express Mobile has not served Infringement

Contentions. Defendants object to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it is not timebound by any relevant time period.

Defendants object to this Request for Production as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "All" documents "relating to" certain

topics. Defendants object to this Request to the extent it seeks disclosure of highly confidential

source code without a stipulated protective order. Defendants object to this Request as unduly

burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to

the needs of the case. Defendants also object to this Request to the extent that the burden of its

scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 3**

Documents sufficient to identify each employee, officer, and/or other personnel who is or

has been engaged in the design and/or development of each Accused Product, including the

identity of the design or portion of the design contributed by each employee, and also including

copies of past and/or present management and organizational charts and other documents

sufficient to show the corporate structure and reporting relationships within each division,

subsidiary, joint venture, or other such entity of the Defendants that designs, develops, markets, or

sells any Accused Product, and also including documents sufficient to identify members of

development teams or development organizations.

**Response to Request for Production No. 3**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrases

"Accused Product" and "personnel who is or has been engaged in the design and/or development." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 4**

Documents sufficient to identify all entities other than the Defendants or their employees that contributed to the design of each Accused Product, including the identity of the design or portion of the design contributed by each entity.

**Response to Request for Production No. 4**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases

"Accused Product" and "contributed to the design of." Defendants object to this Request as

unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks

information regarding products beyond those identified in Plaintiff's First Amended Complaint.

Defendants object to this Request for Production as premature to the extent Defendants have not

filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also

object to this Request because the Request does not reasonably limit the scope of the request to

information related to claims or defenses in the case. Defendants object to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not

timebound by any relevant time period. Defendants object to this Request as unduly burdensome,

overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the

case. Defendants also object to this Request to the extent it seeks documents regarding persons or

entities that are not parties to this case. Defendants also object to this Request to the extent that it

seeks confidential and/or proprietary business information of third parties. Defendants also object

to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Defendants also object to this Request to the extent it seeks documents not in the possession of

Defendants.

   Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in its possession, custody, or control.

**Request for Production No. 5**

   All Documents relating to the architecture, design, operation, and functionality of each

version, model, or other variation of each Accused Product.

**Response to Request for Production No. 5**

   In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrases

"Accused Product" and "relating to the architecture, design, operation, and functionality." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "relating to" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks disclosure of highly confidential source code without a stipulated protective order. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 6**

For each Accused Product, each version (both public and nonpublic) of any promotional or marketing materials, brochures, user guides or instructions, technical documents, programming

and/or software documents, and technical support documents.

**Response to Request for Production No. 6**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "Accused Product." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "each version." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks disclosure of highly confidential source code without a stipulated protective order. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance. Defendants also object to this Request to the relevance of non-public versions of promotional or marketing materials.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 7**

All Documents that reference or discuss the full product name, internal names, code names, project names, or any other designation for each Accused Product.

**Response to Request for Production No. 7**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "any other designation" and "Accused Product." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "that reference or discuss" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks disclosure of highly confidential source code without a stipulated protective order. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also

object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 8**

For each model or version of each Accused Product, all versions of software and software updates for the product.

**Response to Request for Production No. 8**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "Accused Product." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" versions. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks disclosure of highly confidential source code without a stipulated protective order. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is

proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 9**

For each Accused Product, all source code and software documentation for the Accused Functionalities.

**Response to Request for Production No. 9**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Product" and "Accused Functionalities." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" source code and software documentation. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks disclosure of highly confidential source code without a stipulated protective order. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the

1    extent that the burden of its scope and time period outweighs its relevance.

2         Subject to their objections, Defendants are conducting a reasonable search for responsive,

3    non-privileged documents in their possession, custody, or control.

4    **Request for Production No. 10**

5    
6         For each Accused Product, all Documents and Communications between Defendants and

7    third parties or customers regarding the Accused Functionalities of the Accused Product.

8    **Response to Request for Production No. 10**

9         In addition to its general objections, Defendants object to this Request as unduly

10   burdensome, overbroad, and vague and ambiguous, including with respect to the phase "Accused

11   Functionalities of the Accused Product." Defendants object to this Request for Production as

12   overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks

13   "all" documents and communications "regarding" certain topics. Defendants object to this

14   Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the

15   extent it seeks information regarding products beyond those identified in Plaintiff's First

16   Amended Complaint. Defendants object to this Request for Production as premature to the extent

17   Defendants have not filed an Answer and Express Mobile has not served Infringement

18   Contentions. Defendants also object to this Request because the Request does not reasonably limit

19   the scope of the request to information related to claims or defenses in the case. Defendants object

20   to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

21   the extent it is not timebound by any relevant time period. Defendants object to this Request to

22   the extent it seeks information protected from disclosure by the attorney-client privilege, work-

23   product doctrine, common interest protection, or any other applicable privilege or immunity.

24   Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not

25   demonstrated how such request is proportional to the needs of the case. Defendants also object to

26   
27   
28

this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance. Defendants also object to this Request to the extent it seeks documents not in the possession of Defendants. Defendants object to this request to the extent it seeks discovery of email or other ESI prior to the entry of a stipulated order for the production of ESI. Defendants also object to the relevance of this Request.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 11**

Documents and Communications concerning agreements between Defendants and third parties under which third parties provide any components or services related to the Accused Functionalities of the Accused Products.

**Response to Request for Production No. 11**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "Accused Functionalities of the Accused Products." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not

timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants object to this request to the extent it seeks discovery of email or other ESI prior to the entry of a stipulated order for the production of ESI. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 12**

The Documents concerning actual or projected revenue, gross profits, operating profit, and any other financial data concerning the Accused Products.

**Response to Request for Production No. 12**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Products" and "any other financial data." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a

damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 13**

Documents sufficient to identify what products or software are bundled with, or otherwise provided for no additional charge with your products and services which include, are made with, and/or use each Accused Product.

**Response to Request for Production No. 13**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Product" and "products or software [] bundled with, or otherwise provided for no additional charge." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory. Defendants also object

to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 14**

All product development proposals for each Accused Product.

**Response to Request for Production No. 14**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "product development proposals" and "Accused Product." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" proposals. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request

for Production as premature to the extent Defendants have not filed an Answer and Express

Mobile has not served Infringement Contentions. Defendants also object to this Request because

the Request does not reasonably limit the scope of the request to information related to claims or

defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it is not timebound by any relevant time period.

Defendants object to this Request to the extent it seeks information protected from disclosure by

the attorney-client privilege, work-product doctrine, common interest protection, or any other

applicable privilege or immunity. Defendants object to this Request as unduly burdensome,

overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the

case. Defendants also object to this Request to the extent that the burden of its scope and time

period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 15**

For each version of each Accused Product, Documents sufficient to show the date the

product was first made, used, offered for sale, sold or licensed.

**Response to Request for Production No. 15**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "Accused

Product." Defendants object to this Request as unduly burdensome, overbroad, and not

proportional to the needs of the case to the extent it seeks information regarding products beyond

those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for

Production as premature to the extent Defendants have not filed an Answer and Express Mobile

has not served Infringement Contentions or articulated a damages theory and bears the burden.

Defendants also object to this Request to the extent that it seeks documents that are publicly

available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no

greater burden for Express Mobile than Defendants to obtain.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 16**

All licenses for any technology, or software used in any of the Accused Products.

**Response to Request for Production No. 16**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "any

technology, or software" and "Accused Products." Defendants object to this Request for

Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "All" licenses. Defendants object to this Request as unduly burdensome,

overbroad, and not proportional to the needs of the case to the extent it seeks information

regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants

object to this Request for Production as premature to the extent Defendants have not filed an

Answer and Express Mobile has not served Infringement Contentions or articulated a damages

theory and bears the burden. Defendants also object to this Request because the Request does not

reasonably limit the scope of the request to information related to claims or defenses in the case.

Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the

needs of the case to the extent it is not timebound by any relevant time period. Defendants also

object to this Request to the extent that the burden of disclosure of sensitive information

outweighs its relevance. Defendants object to this Request to the extent it seeks information

protected from disclosure by the attorney-client privilege, work-product doctrine, or any other

applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 17**

All Documents concerning the costs of development and implementation of any of the Accused Products.

**Response to Request for Production No. 17**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "costs of development and implementation" and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer, Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 18**

All Documents concerning any studies, analyses, memoranda or presentations concerning any cost savings attributable to using any of the Accused Products.

**Response to Request for Production No. 18**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "any studies, analyses, memoranda, or presentations" and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected

from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control,

**Request for Production No. 19**

All Documents referring to or constituting suggestions, requests, praise, complaints, or feedback from users and/or purchasers of any of the Accused Products, including without limitation all articles, press releases, advertisements, books, correspondence, statements, or other testimonials created by or for, prepared by or for, or issued by Defendants.

**Response to Request for Production No. 19**

 In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Products" and "constituting suggestions, requests, praise, complains, or feedback." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "referring to" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of

the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control,

**Request for Production No. 20**

All business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and capital or investment plans referring or relating to such products/services concerning the Accused Products.

**Response to Request for Production No. 20**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and capital or investment plans" and "relating to such products/services concerning the Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" plans "relating to" certain

topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control,

**Request for Production No. 21**

All Documents relating to actual or prospective sales, usage, advertising, marketing, or promotion of such product/service of the Accused Products.

**Response to Request for Production No. 21**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "relating to actual or prospective sales, usage, advertising, marketing, or promotion" and "such product/service of the Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "relating to" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control,

**Request for Production No. 22**

All Documents referring or relating to any market studies, reports, or analyses concerning product design, competition, consumer surveys, consultant surveys, advertising campaigns,

promotional or sales training material, market segments, market share, or market revenue (actual or predicted), concerning any of the Accused Products.

**Response to Request for Production No. 22**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "any market studies, reports, or analyses," "product design, competition, consumer surveys, consultant surveys, advertising campaigns, promotional or sales training material, market segments, market share, or market revenue," and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "referring or relating to" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it

seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 23**

The Documents regarding customer usage of the Accused Functionalities of the Accused Products.

**Response to Request for Production No. 23**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "The Documents," "customer usage," and "Accused Functionalities of the Accused Products." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the

case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 24**

All Documents, provided to or received by Defendants, or disseminated by Defendants at any presentation or meeting, concerning Express Mobile, the Asserted Patents and/or the possibility that Defendants might infringe any Express Mobile patent, including, but not limited to, negotiation booklets, investor or prospective investor documents, bank regulatory filings, SEC filings, customer communications, supplier or vendor communications, analyses, claim charts, memoranda, or other documents used or exchanged in connection with such presentation or meeting.

**Response to Request for Production No. 24**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "disseminated by Defendants at any presentation or meeting" and "the possibility that Defendants might infringe any Express Mobile patent." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this

Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 25**

All Documents concerning or supporting Your counterclaims, affirmative defenses, other defenses and/or any position You may assert in this Litigation.

**Response to Request for Production No. 25**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "any position You may assert in this Litigation." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning or supporting" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer, counterclaims, or affirmative defenses. Express Mobile has not served Infringement Contentions or articulated a

damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

This Request is premature, as Defendants have not yet filed an answer, counterclaims, affirmative defenses, or otherwise responded to Express Mobile's complaint.

**Request for Production No. 26**

All Documents concerning the Asserted Patents, including concerning any analysis of the Asserted Patents completed by or on behalf of Defendants, including any opinion on validity or infringement of any claim of any of the Asserted Patents.

**Response to Request for Production No. 26**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "analysis of the Asserted Patents." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that it seeks documents

that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control

**Request for Production No. 27**

All Communications between Defendants and their partners, affiliates, and customers referring to or concerning any of the Asserted Patents and/or legal proceeding filed by Express Mobile.

**Response to Request for Production No. 27**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous. Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" communications "referring to or concerning" certain topics. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants object to this request to the extent it seeks discovery of email or other ESI prior to the entry of a stipulated order for the production of ESI. Defendants also object to this Request to the extent that the

burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 28**

All patent license agreements entered into by Defendants that cover, concern or relate to any of the Accused Products.

**Response to Request for Production No. 28**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "relating to" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants also object to this Request to the extent that the burden of disclosure of sensitive information outweighs its relevance. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or

entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 29**

All Documents, identified by, or requested to be identified by, any interrogatory by Express Mobile served in this litigation, or any response or supplemental response of Defendants to any interrogatory served by Express Mobile in this Litigation.

**Response to Request for Production No. 29**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "identified by, or requested to be identified by." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Interrogatories. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise

available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Defendants are not aware of any responsive documents and will not produce documents pursuant to this request at this time.

**Request for Production No. 30**

All Documents concerning contracts, agreements, understandings, communications, negotiations, meetings or discussions between Defendants and any supplier, distributor, third-party or collaborator, about, related to, or concerning any of the Accused Products.

**Response to Request for Production No. 30**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "concerning contracts, agreements, understandings, communications, negotiations, meetings, or discussions" and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period.

Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants object to this request to the extent it seeks discovery of email or other ESI prior to the entry of a stipulated order for the production of ESI. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 31**

All Documents concerning any communication, negotiation, meeting or discussion, between Defendants and any affiliate or third-party entity concerning any of the Asserted Patents or any related patent.

**Response to Request for Production No. 31**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "concerning any communication, negotiation, meeting or discussion." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and

bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, common interest protection, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance. Defendants object to this request to the extent it seeks discovery of email or other ESI prior to the entry of a stipulated order for the production of ESI. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent it seeks documents not in the possession of Defendants.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 32**

All Documents concerning the nature, size, scope of the market for, market size for market share for, usage of, adoption of, availability of, and/or demand for any of the Accused Products.

**Response to Request for Production No. 32**

1  
2  

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "nature, size, scope of the market for, market size for market share for, usage of, adoption of, availability of, and/or demand" and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 33**

All Documents concerning any plan, activity, work or effort to design around or avoid infringement of any of the Asserted Patents or any claim thereof, including but not limited to documents reflecting any design, engineering or specification changes or schematic changes to the Accused Products, and the cost associated with any design-around or avoidance of any of the

Asserted Patents.

**Response to Request for Production No. 33**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "plan, activity, work or effort," "avoid infringement," "design, engineering or specification changes or schematic changes," and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 34**

All Documents concerning Defendants' decision to implement the Accused Functionalities of the Accused Products.

**Response to Request for Production No. 34**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "decision to implement" and "Accused Functionalities of the Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 35**

Any management reports or management packages concerning any of the Accused

Products, Express Mobile, or this litigation.

**Response to Request for Production No. 35**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "management reports or management packages" and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "Any" documents "concerning." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance. Defendants also object to the relevance of this Request.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 36**

All Documents concerning the benefits to Defendants' customers of any of the Accused Products.

**Response to Request for Production No. 36**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "concerning the benefits to Defendants' customers" and "Accused Products." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "concerning" certain topics. Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 37**

All Documents that Defendants may rely upon or introduce at a deposition, hearing, or trial in this Litigation.

**Response to Request for Production No. 37**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "may rely on." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

This Request is premature, as there are no currently scheduled depositions, hearings, or trials in this case.

**Request for Production No. 38**

All Documents relating to any claim for indemnification arising out of or otherwise relating to this Litigation.

**Response to Request for Production No. 38**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "arising out of or otherwise relating to this Litigation." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "relating to" certain topics. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance. Defendants also object to the relevance of this Request.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 39**

All Documents that support any denial in Your answer, or in any amended answer.

**Response to Request for Production No. 39**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "that support any denial." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable

privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and

Plaintiff has not demonstrated how such request is proportional to the needs of the case.

Defendants also object to this Request to the extent that the burden of its scope and time period

outweighs its relevance.

This request is premature, as Defendants have not yet filed an Answer.

**Request for Production No. 40**

All Documents related to any contention that the Asserted Patents, or any claims therein,

are invalid or unenforceable, including any alleged prior art.

**Response to Request for Production No. 40**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "related

to any contention." Defendants object to this Request for Production as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents

"related to" certain topics. Defendants object to this Request for Production as premature to the

extent Defendants have not filed an Answer and Express Mobile has not served Infringement

Contentions or articulated a damages theory and bears the burden, and the Request seeks

contentions, expert opinions, and/or expert testimony before such information is required to be

provided. Defendants object to this Request to the extent it seeks information protected from

disclosure by the attorney-client privilege, work-product doctrine, or any other applicable

privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and

Plaintiff has not demonstrated how such request is proportional to the needs of the case.

Defendants also object to this Request to the extent that the burden of its scope and time period

outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 41**

All Documents related to any contention by You that Express Mobile's claims for relief are barred by equitable doctrines, including the doctrines of estoppel, disclaimer, waiver, and/or unclean hands.

**Response to Request for Production No. 41**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "related to any contentions." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "related to" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 42**

All Documents related to any contention by You that Express Mobile's claims for relief

are barred by damages limitations, including 35 U.S.C. §§ 286 and 287.

**Response to Request for Production No. 42**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "related to any contention." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "related to" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 43**

All Documents related to the legal and factual bases for each and every defense alleged by You in this Litigation.

**Response to Request for Production No. 43**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "related

to the legal and factual bases." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "related to" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

This request is premature, as Defendants have not yet filed a response to Express Mobile's complaint.

**Request for Production No. 44**

All Documents related to any contention by Defendants that their infringement of the Asserted Patents is not willful and that enhanced damages should not be awarded.

**Response to Request for Production No. 44**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "related to any contention." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents "related to" certain topics. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement

Contentions or articulated a damages theory and bears the burden, and the Request seeks

contentions, expert opinions, and/or expert testimony before such information is required to be

provided. Defendants object to this Request to the extent it seeks information protected from

disclosure by the attorney-client privilege, work-product doctrine, or any other applicable

privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and

Plaintiff has not demonstrated how such request is proportional to the needs of the case.

Defendants also object to this Request to the extent that the burden of its scope and time period

outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 45**

All Documents received from any fact witness contacted, interviewed, or consulted by

Defendants or their agents or attorneys in connection with the Asserted Patents or this litigation.

**Response to Request for Production No. 45**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "in

connection with the Asserted Patents or this litigation." Defendants object to this Request for

Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "All" documents. Defendants object to this Request to the extent it seeks

information protected from disclosure by the attorney-client privilege, work-product doctrine, or

any other applicable privilege or immunity. Defendants object to this Request as unduly

burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to

the needs of the case. Defendants also object to this Request to the extent it seeks documents

regarding persons or entities that are not parties to this case. Defendants also object to this

1    Request to the extent that it seeks confidential and/or proprietary business information of third

2    parties. Defendants also object to this Request to the extent that the burden of its scope and time

3    period outweighs its relevance.

4            Subject to their objections, Defendants are conducting a reasonable search for responsive,

5    non-privileged documents in their possession, custody, or control.

6

7    **Request for Production No. 46**

8            All Documents received in response to any subpoena issued in this Litigation.

9    **Response to Request for Production No. 46**

10           In addition to its general objections, Defendants object to this Request for Production as

11   premature as Defendants have not filed an Answer and no subpoenas have been issued in this

12   litigation. Defendants also object to this Request to the extent that it seeks confidential and/or

13   proprietary business information of third parties.

14           This request is premature, as no subpoenas have been issued in this litigation and

15   discovery is not yet complete.

16

17   **Request for Production No. 47**

18           For each Accused Product, Documents sufficient to show how and where any developed,

19   configured, and/or modified content is stored.

20   **Response to Request for Production No. 47**

21           In addition to its general objections, Defendants object to this Request as unduly

22   burdensome, overbroad, and vague and ambiguous, including with respect to the phrases

23   "Accused Product" and "how and where any developed, configured, and/or modified content is

24   stored." Defendants object to this Request as unduly burdensome, overbroad, and not proportional

25   to the needs of the case to the extent it seeks information regarding products beyond those

26   identified in Plaintiff's First Amended Complaint. Defendants object to this Request for

27

28

Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 48**

For each Accused Product, Documents sufficient to identify any servers, data centers, or databases that support the Accused Products.

**Response to Request for Production No. 48**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Product" and "servers, data centers or databases that support." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it is not timebound by any

relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and

Plaintiff has not demonstrated how such request is proportional to the needs of the case.

Defendants also object to this Request to the extent that the burden of its scope and time period

outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 49**

Documents sufficient to reflect (a) the date or dates on which You first became aware of

either of the Asserted Patents and (b) the circumstances under which You gained that initial

awareness.

**Response to Request for Production No. 49**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "You

first became aware" and "the circumstances under which You gained that initial awareness."

Defendants object to this Request to the extent it seeks information protected from disclosure by

the attorney-client privilege, work-product doctrine, or any other applicable privilege or

immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has

not demonstrated how such request is proportional to the needs of the case. Defendants also

object to this Request to the extent that it seeks documents that are publicly available, in the

public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for

Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent

that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive,

non-privileged documents in their possession, custody, or control.

**Request for Production No. 50**

All Documents that refer to Express Mobile's October 3, 2019 letter to You regarding the Asserted Patents, including all Documents that refer to or reflect whether or how to respond to the letter.

**Response to Request for Production No. 50**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "refer to or reflect whether or how to respond." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents that "refer to" certain topics. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 51**

All Documents that refer to or reflect Communications regarding licensing the Asserted Patents.

**Response to Request for Production No. 51**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "refer to or reflect." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents that "refer to" certain topics. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants object to this request to the extent it seeks discovery of email or other ESI prior to the entry of a stipulated order for the production of ESI. Defendants also object to this Request to the extent that it seeks documents that are publicly available, in the public domain, or otherwise available to Express Mobile, and, therefore, are no greater burden for Express Mobile than Defendants to obtain. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 52**

All Documents that You contend establish or bear in any way on the date of the hypothetical negotiation.

**Response to Request for Production No. 52**

In addition to its general objections, Defendants object to this Request as unduly

burdensome, overbroad, and vague and ambiguous, including with respect to the phrase "establish or bear in any way on the date." Defendants object to this Request for Production as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "All" documents. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden, and the Request seeks contentions, expert opinions, and/or expert testimony before such information is required to be provided. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 53**

Documents sufficient to show all of the ways You generate revenues and/or profits, directly or indirectly, from the Accused Products.

**Response to Request for Production No. 53**

 In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Products" and "all of the ways You generate revenues." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement

Contentions or articulated a damages theory and bears the burden. Defendants also object to this Request because the Request does not reasonably limit the scope of the request to information related to claims or defenses in the case. Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not timebound by any relevant time period. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that it seeks confidential and/or proprietary business information of third parties. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 54**

Documents sufficient to show the number of monthly, quarterly, and/or annual U.S. subscribers, U.S. total users, and U.S. active users of the Accused Products from 2014 to present, by Accused Product.

**Response to Request for Production No. 54**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Product" and "annual U.S. subscribers, U.S. total users, and U.S. active users of the Accused Products." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile

has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or entities that are not parties to this case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

**Request for Production No. 55**

Documents sufficient to show the number of monthly, quarterly, and/or annual U.S. subscribers, U.S. total users, and U.S. active users of the Accused Functionalities from 2014 to present, by Accused Functionality.

**Response to Request for Production No. 55**

In addition to its general objections, Defendants object to this Request as unduly burdensome, overbroad, and vague and ambiguous, including with respect to the phrases "Accused Functionalities" and "annual U.S. subscribers, U.S. total users, and U.S. active users of the Accused Functionalities." Defendants object to this Request as unduly burdensome, overbroad, and not proportional to the needs of the case to the extent it seeks information regarding products beyond those identified in Plaintiff's First Amended Complaint. Defendants object to this Request for Production as premature to the extent Defendants have not filed an Answer and Express Mobile has not served Infringement Contentions or articulated a damages theory and bears the burden. Defendants object to this Request as unduly burdensome, overbroad, and Plaintiff has not demonstrated how such request is proportional to the needs of the case. Defendants also object to this Request to the extent it seeks documents regarding persons or

entities that are not parties to this case. Defendants also object to this Request to the extent that the burden of its scope and time period outweighs its relevance.

Subject to their objections, Defendants are conducting a reasonable search for responsive, non-privileged documents in their possession, custody, or control.

Dated:  April 26, 2021                          BAKER BOTTS LLP


By: */s/ Jeremy J. Taylor*
    JEREMY J. TAYLOR

Attorney for Defendants
BOOKING.COM B.V., PRICELINE.COM
LLC, AGODA COMPANY PTE. LTD.,
AND OPENTABLE, INC.


## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2021 the within document was filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the attorneys of record in this case.

*/s/ Jeremy J. Taylor*
JEREMY J. TAYLOR